[Civ. No. 2938. Fourth Dist. Dec. 4, 1942.]

WILLIAM C. MAHAR, Plaintiff; GERTRUDE S. MAHAR, as Administratrix, etc., (Substituted Plaintiff), Respondent, v. WILLIS A. MacKAY, Appellant.

Fred A. Wilson for Appellant.

Howell W. Richardson and Lowell E. Lathrop for Respondent.

MARKS, J.—This is an appeal from a judgment awarding William C. Mahar $10,000 damages for injuries suffered in a motor vehicle collision which occurred on Foothill Boulevard east of Claremont, at about six o'clock in the evening of October 20, 1938. Mahar died during the pendency of this appeal and his administratrix has been substituted as plaintiff.

Foothill Boulevard is a four-lane highway with macadam shoulders on both sides. The traffic lanes are separated by a strip in the center of the highway bounded by double lines. The highway runs in a general easterly and westerly direction. The northerly lanes are used by westbound traffic and the southerly lanes by eastbound traffic. On both sides of the point of impact the highway is straight and the view is unobstructed. The evening of October 20, 1938, was clear and the roadway was dry.

Mahar owned a Dodge sedan of somewhat ancient vintage. He had the portion of the body to the rear of the front seat cut off and a wood platform built on the chassis. It rested on 4 x 6 stringers and was of heavy construction and was attached to the chassis with bolts. A water tank was mounted on this platform and was fastened to it with wire. The height of the tank above the roadway was about eight or ten feet.

Mahar's home was on the north side of the highway. His water supply came from a hydrant on the south side of the

highway. He used the Dodge and tank to transport water to his house.

Mahar testified that on the evening of the accident he drove his Dodge onto the highway and proceeded west along the north shoulder for about 300 yards. When the road was clear of traffic he made a "U" turn and was proceeding easterly in the south traffic lane at a speed of between 15 and 20 miles an hour when his vehicle was struck in the rear. It was struck by a Pierce Arrow sedan being driven by defendant. Mahar was thrown to the pavement and seriously injured.

There is little conflict in the evidence except on two points: (1) Was the Dodge stopped on the south half of the highway, or was it proceeding over it at the time of the accident? (2) Was there any light on the rear of the Dodge?

The argument on the question of the Dodge being parked on the highway is based principally on the testimony of Amelia A. Wolfe, a witness for the defendant, who was driving east on Foothill Boulevard, passing the scene of the accident somewhere near six o'clock. She testified: "Well, I couldn't say whether it was a car or whether it was a truck, or what; something was in the road—in the center lane on the south side of the road; I couldn't say whether it was a truck or a car; but there was something in the center of the road when I passed by. Q. When you say you saw something, you mean some kind of an automobile? A. A car, or something or other; I couldn't say just what it was,—whether it was a truck or a car; it was either a truck or a car; I didn't pay enough attention to it." She further testified that she saw "the shadow of a man behind the car . . . on the south side . . . the hood was up," and also that she could not remember if there were any lights on the vehicle.

There was no attempt on the part of the witness to identify the vehicle as the Dodge belonging to Mahar. This rather vague evidence is not sufficient to overcome the implied finding of the jury that the Dodge was moving on the highway at the time of the collision, supported as it is by the positive evidence of Mahar. Thus the argument that Mahar was guilty of negligence as a matter of law that proximately contributed to his injuries because he parked his vehicle on the highway in violation of section 582 of the Vehicle Code lacks convincing force.

The evidence on the question of the lights on the Dodge

is in sharp conflict. Defendant and his wife were positive that no lights were illuminated. Mahar was equally positive that both headlights and the tail light were burning, although he admitted that the tail light showed a white light instead of red as required by the provisions of section 621 of the Vehicle Code. As the sun set at 5:12 p. m. on October 20, 1938, and the accident happened at about 6:00 o'clock, this constituted negligence as a matter of law. Whether or not that circumstance contributed to the accident and therefore barred recovery as a matter of law requires separate consideration.

Two peace officers reached the scene of the accident before either vehicle had been moved. They turned on the light switch of the Dodge and but one headlight burned. There was no tail light on the vehicle and they could find none at or near the scene of the collision. Other witnesses saw the remains of a broken tail light bracket on the Dodge and connections for the electric wiring. One witness described the break in the bracket as new.

Defendant argues strenuously that the admitted absence of a red tail light on the Dodge was contributory negligence as a matter of law which necessitates a reversal of the judgment. As all of the witnesses, including Mahar, who were at or near the scene of the collision fixed its time at about 6:00 o'clock we can give little weight to the argument, based on inferences, to the effect that the jury might have concluded that it occurred before one-half hour after sunset.

In weighing the effect of the admitted negligence of Mahar in not having a red tail light on his vehicle, and the negligence, if any, of defendant in the operation of his automobile, we must consider the evidence of defendant and his wife, certain undisputed evidence as to the conditions of visibility at the time, and the undisputed physical facts appearing after the collision.

Defendant and his wife testified they had eaten at a drive-in road stand in Claremont; that when they left, at about 6:00 o'clock, the lights of their automobile were turned on; that after they left the residential district they proceeded east on the highway at a speed of about 35 miles an hour; that an unlighted object of considerable size suddenly loomed up in their path when they were between 40 and 45 feet from it. Defendant testified that he applied the brakes of his car but could not stop and crashed into the rear of the object which proved to be the Mahar Dodge.

The Dodge was driven in a northeasterly direction by the impact, the front of the vehicles coming to rest on the strip dividing the traffic lanes, with its rear between 19 and 25 feet from the front of the Pierce Arrow. The left rear wheel of the Dodge was locked and would not rotate. One of the 4 x 6 stringers was broken, one end falling to the pavement. The rear of the heavy flooring supporting the tank was considerably shattered and the whole platform was driven forward. The tank broke from its moorings and was catapulted onto the Pierce Arrow where it came to rest. Mahar was lying on the pavement about 15 feet directly to the rear of the Pierce Arrow. The northerly door of the Dodge was open and the steering wheel was broken completely from its column, though where it was found after the accident is in dispute.

These facts justify the inference, if drawn by the jury, that the Pierce Arrow struck the Dodge with such force that its left front door was forced open, Mahar was catapulted to the pavement, and the Dodge was driven forward a distance of not less than 52 feet with one of its rear wheels locked. It is evident that the force of the collision was considerable and the jury might have concluded, with reason, that the Pierce Arrow was being driven at a speed considerably in excess of the 35 miles per hour admitted by defendant.

The evidence on the condition of visibility at the time of the collision has an important bearing on the question of the negligence of Mahar, in not having a red light (and perhaps no light, as defendant maintains) on the rear of his Dodge, being a contributing cause of the accident, as well as on the negligence of defendant in not seeing the Dodge until he was too close to it to avoid running into it.

Several witnesses for Mahar testified that it was dusk but not dark when the accident happened; that numerous automobiles on the highway did not have their lights burning; that vehicles could be seen at distances varying between 300 yards and a quarter of a mile.

If, as indicated by this evidence, vehicles on the highway were rather clearly visible for three hundred yards or more, the jury, in reason, might have concluded that defendant should have seen the Dodge on the road in front of him in sufficient time to have avoided running into it. The failure to keep a vigilant watch of the highway in front of him, and to see that which is plainly visible, may constitute negligence

that will make the inattentive driver responsible for the damages proximately resulting therefrom.

This same evidence has an important bearing on the question of the admitted negligence of Mahar in not having a red tail light on his truck (or no light, as defendant maintains) being a contributing cause of the accident that bars his recovery. If we assume that there was a white light shining on the rear of the Dodge, that should have given some warning to a driver approaching from the rear. If there was no light on its rear and if the vehicle were visible to other drivers 300 yards away, should not defendant have seen it and avoided the collision? If defendant was so inattentive to his driving as to have failed to have seen the Dodge in front of him under these circumstances, the question as to his having seen a red tail light, had there been one on the Dodge, is open to argument. The jury may have believed that, owing to his inattention, he would not have seen the tail light had there been one, as he did not see the Dodge. Thus a question of fact arose as to whether or not the lack of a rear light on the Dodge contributed to the cause of the accident. This question was primarily addressed to the jury which impliedly found Mahar free from contributory negligence. As the questions of the negligence of a defendant being the proximate cause of an accident, and the negligence of a plaintiff being a contributing cause of an accident, are generally of fact addressed to the trier of fact and not to the appellate court, we cannot disturb the judgment on these grounds under the facts here presented. (*Furuta* v. *Randall*, 17 Cal.App.2d 384 [62 P.2d 157].)

Defendant offered to prove that a week or more prior to the accident the Dodge was seen on the road at night with but one head light and no tail light. Mahar had previously testified that no change had been made in the lighting system during that time.

This evidence was clearly admissible as it tended to impeach Mahar's testimony that both head lights and a rear white light were illuminated on the evening in question here. However, for the reasons just given, we cannot regard this error in rejecting the offer as sufficiently prejudicial to require a reversal of the judgment.

Defendant argues that the testimony of Mahar, that he was driving his Dodge along the highway when it was struck

by the Pierce Arrow, is so contrary to known probabilities, and the injuries which he actually received, as to be unworthy of belief. It is argued that had Mahar been sitting on the seat of his Dodge when it was struck, the lower part of his body would have been crushed between the heavy wooden bed, which was driven forward by the impact, and the dashboard; that as he suffered no such injuries he could not have been sitting on the seat driving the vehicle.

While this argument might well have been, and probably was, urged before the jury, it cannot avail defendant here. Many very improbable things do actually result from a motor vehicle collision. It is just as reasonable to assume that Mahar was thrown off the seat and onto the pavement by the first impulse of the impact. We cannot weigh such probabilities here.

■ Defendant urges error in the giving of the following instruction at the request of Mahar:

"You are instructed that the failure of the plaintiff to have a lighted tail light on his automobile, if you find there was such a failure, does not necessarily constitute negligence on his part. In order for it to constitute negligence you must first find that the car was being operated at that time of day when the law required a lighted tail light, and, in addition, that the plaintiff knew that he did not have a lighted tail light on his automobile, or, that as a reasonably prudent man exercising due care and caution he should have known that there was no lighted tail light on his automobile.

"If in this case you find that the plaintiff at the moment of starting out on his trip determined that the rear or tail light on his automobile was lighted, and you further find as a matter of fact that such tail light at said time was lighted, then you are instructed that the plaintiff is not guilty of negligence in this particular, even though the rear or tail light was out when the collision occurred, unless you further find that the cause of the failure of said tail light was due to lack of care, attention or caution on the part of the plaintiff."

It is urged that the expression "lighted tail light" is incorrect as it might be construed to refer to a white light on the rear of a motor vehicle instead of the red light the law requires. This is technically true. However, automobiles are in such general use and the expression "tail light" is so generally understood as referring to a red light on the rear of a motor vehicle that we do not believe the jury could

have been misled, especially as the trial court elsewhere read to the jury section 621 of the Vehicle Code defining a tail light.

■ The instruction seems to be an attempt to state the rule to the effect that where a motor vehicle is equipped with a proper tail light which is illuminated when a journey is commenced, but becomes extinguished without the fault or knowledge of the driver, such fact will not necessarily bar his recovery in every case.

The instruction should not have been given. Mahar admitted there was no red light on the rear of his Dodge. All the substantial evidence indicates that the accident happened at an hour when the law required the conventional tail light to be displayed. Such an instruction, even had it been properly drawn, was not applicable to the facts of this case.

As we have observed, the trial court elsewhere properly instructed the jury on the law requiring a red tail light. It also instructed the jury that if the absence of a proper tail light "contributed in any respect, however slight, to the resulting collision between the vehicles of the plaintiff and the defendant, then I instruct you that the plaintiff cannot recover, and your verdict must be for the defendant."

Under these circumstances we cannot conclude that the challenged instruction, though erroneous, was sufficiently prejudicial to require a reversal of the judgment. (§ 4½, art. VI, Const.)

■ Defendant complains of an instruction on the measure of damages. The first paragraph, relating to damages already suffered, omitted the requirement that only such damages as *proximately result* from the accident are compensable. To that extent the instruction was erroneous. The second paragraph relating to future damages contained this element.

The undisputed evidence discloses that Mahar was a strong, healthy man prior to the accident and that he suffered serious injuries in it. There was no injury nor impairment of his faculties which he had suffered up to the time of the trial described in the evidence that could have resulted from any cause other than the accident. Under these circumstances we cannot regard the instruction as prejudicially erroneous.

Defendant complains of other instructions given at the request of Mahar. While some of them are not models of excellence, we do not consider any of them to be sufficiently erroneous to require detailed discussion here.

■ Defendant urges that the damages awarded are excessive.

The evidence shows that Mahar suffered very serious injuries. There was a cut on his head that extended through the tissues to the skull. It required nineteen stitches to close. The blow caused the brain to swell and press on the skull. He became maniacal to such an extent that he could not remain in a private hospital and was confined in the psychopathic ward of the county hospital. He suffered severe and continuing headaches up to the time of the trial which was over two years and four months after the accident. Some of his teeth were chipped or broken. Four ribs were broken. A shoulder blade was broken and had not resumed its proper position at the time of the trial. The left shoulder girdle was dislocated and had not properly united, thus interfering with the usefulness of the arm. With evidence before us of these injuries and the pain and suffering incident to them, we cannot say that the amount of "the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment." We cannot reverse a judgment on this ground "unless the verdict is so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury. (*Martin* v. *Shea,* 182 Cal. 130, 139 [187 P. 23] ; *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713, 715 [106 P. 83] ; *Lahti* v. *McMenamin,* 204 Cal. 415, 419 [268 P. 644].)" (*Ware* v. *McPherson,* 213 Cal. 120 [1 P.2d 433].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 1, 1943.