[Civ. No. 7578. Third Dist. Aug. 16, 1949.]

CATHERYN JOHNSON et al., Respondents, v. CHRISTINE MARQUIS, Appellant.

Cooley, Crowley & Gaither and Vernon F. Gant for Appellant.

Cleary & Zeff, C. Ray Robinson and Margaret A. Flynn for Respondents.

THOMPSON, J.—The defendant, Christine Marquis, has appealed from a judgment rendered pursuant to a verdict for plaintiffs in a suit for damages for personal injuries received as the result of alleged intoxication and wilful misconduct of the owner and driver of an automobile in which they were riding as guests and also from an order denying motion for judgment notwithstanding the verdict.

The action was dismissed, at the close of the evidence, as to the codefendants, W. R. Thomas and Grover S. Berg, the owner and driver respectively of a truck parked on the highway, into which the appellant's machine crashed. The appellant contends that her demurrer to the amended complaint should have been sustained and that her motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial should have been granted, for lack of evidence to show that plaintiffs were riding in her machine *as passengers* when the accident occurred, and that there is an absence of evidence to support the verdict and judgment that appellant was either intoxicated or guilty of wilful misconduct.

Christine Marquis, the appellant, is a widow who operated an apartment house in Oakland. She owned the Ford coupe which was involved in this accident. Her deceased husband had formerly owned Twain-Harte Lodge, a resort situated 12 miles from Sonora. The plaintiff, Catheryn Johnson, was the manager of appellant's apartment house. The plaintiff, John Vallortigara, was an old friend of appellant, and was living in her apartment house. All three had been invited by the new lessee and manager of the Twain-Harte resort to attend the opening of that Inn near Sonora. On November 16, 1945, after having eaten lunch, they left Oakland in appellant's Ford machine to attend the opening of the resort. They stopped for about half an hour at Oakdale, where each had a 7-Up bourbon highball. They left there at 5:30 p. m. The appellant said that she would drive the car since she was familiar with the road. Vallortigara sat by her side on the front seat. Catheryn Johnson sat in the rear seat. It was dusk and misty. The paved highway was wet. At a point about 9 miles beyond Oakdale, the Ford machine followed a curve of the highway and ran down an incline and then up a slight grade on a straight two-lane highway a distance of some 1,100 feet and crashed into the rear end of a disabled truck which had been parked, with red clearance lights burning, on the right-hand side of the roadway, with the left wheels on the pavement from 3 to 6 feet from the center line. There is evidence that the Ford machine hit the truck with such force that it shoved the truck forward a distance of about 20 feet. There is a conflict of evidence regarding the speed at which the Ford machine was then traveling. Mr. Berg, the driver of the stalled truck, who was standing near by, saw the Ford car approaching when it was some 50 yards away, and ran toward it to warn the driver of the danger. He testified, ''I kept waving and trying to flag her.'' The occupants of the Ford car said they did not see him. They passed him at a high rate of speed. When Mr. Berg was asked to estimate the speed at which the machine was traveling, he replied, ''Well, I knew she was going fast when I first got the sound but I seen the car, I knew she was going fast. . . . I figured at that time she was doing between 90 and 100 [miles per hour], . . . . I don't believe she could have been a-doing a bit under 80. It sounded to me like at that time, from the sound of the motor, it sounded like it was wide open. . . .'' Neither the driver of the Ford nor the plaintiffs saw the truck until the collision occurred. Each occupant of the car was

so seriously injured as to require hospitalization and medical care.

The jury returned a verdict in favor of Catheryn Johnson for $50,000 damages, and for Mr. Vallortigara for $60,000. Judgment was rendered accordingly. From that judgment and from the order denying motion for judgment notwithstanding the verdict this appeal was perfected.

The appellant contends that her demurrer to the amended complaint under section 430, subdivision 5, of the Code of Civil Procedure was improperly overruled. The demurrer was filed on the ground that plaintiffs' causes of action under section 403 of the Vehicle Code, in the third and fourth counts, were "improperly joined and not separately stated." Appellant asserts that the cause based on alleged intoxication should be stated in a count separate from the one founded on wilful misconduct. She suggests that the uniting of those causes in the same count is prejudicial to her for the reason that it precludes her from pleading as a defense the contributory negligence of plaintiffs, since that defense is applicable to a charge of intoxication, while it may not be applicable to a charge of wilful misconduct. In support of the last mentioned statement, appellant cites *Schneider* v. *Brecht*, 6 Cal. App.2d 379 [44 P.2d 662]. In the case last cited the question of a demurrer to the complaint was not involved.

We are of the opinion the demurrer in this case was properly overruled. Paragraph II of the third count of the amended complaint separately states that the injuries sustained by plaintiffs were the result of Christine Marquis "being then and there in a state of intoxication," and independently of said intoxication that she was guilty of wilful misconduct in knowingly, intentionally and recklessly operating her automobile in such a manner as to cause said injuries. That count also specifies the acts and conduct of appellant which constituted the alleged wilful misconduct.

We are cited to no authority which holds that a cause of action for personal injuries resulting to guests from the same transaction, for intoxication and for wilful misconduct, under section 403 of the Vehicle Code, may not be united in the same count, when they are separately stated therein. Section 403 of the Vehicle Code renders a person liable to a guest for injuries sustained as the proximate result of "intoxication or wilful misconduct." In the present case there is evidence to support the theory that the two charges of intoxication and wilful misconduct united to cause the acci-

dent; that the appellant recklessly drove her machine in the manner stated, with implied knowledge that her conduct would result in injury to her guests, and because she was then intoxicated. The appellant was not prejudiced by that ruling of the court upon the demurrer. ■ We perceive of no reason why the appellant was thereby precluded from pleading the defense of contributory negligence to either or both charges of intoxication and wilful misconduct. In fact, the appellant did plead contributory negligence as a defense. Certainly, if plaintiffs had furnished the liquor which caused the appellant to become intoxicated, and voluntarily rode with her, knowing that she was dangerously intoxicated, they might be precluded from recovering damages. Likewise, if they observed the reckless manner in which she was operating the car, and had the opportunity of preventing such conduct, or of stopping the car and refusing to ride with her, and failed to do so, they might also be prevented from recovering damages. That is exactly what this court said in the Schneider case, *supra,* with respect to pleading and relying upon contributory negligence as a defense to alleged wilful misconduct. The court said, at page 383:

''While it is true, generally speaking, that ordinary negligence on the part of a plaintiff is not a defense upon which a defendant may rely when the complaint is based upon a charge of wilful misconduct, this overlooks a principle which we think must be considered, to wit: That *where the negligence of the plaintiff is of such a character that it contributes to, and really becomes a part of, and the inducing cause of the defendant's wilful misconduct, no recovery can be or should be had. . . .*'' (Italics added.)

Subdivision 8 of section 427 of the Code of Civil Procedure authorizes the uniting of several causes of action in the same complaint for ''Claims arising out of the same transaction, or transactions connected with the same subject of action.'' The last paragraph of that section provides that ''causes of action for injuries to person and injuries to property, growing out of the same tort, may be joined in the same complaint, *and it is not required that they be stated separately.*'' In the case of *City Carpet Beating, etc. Works* v. *Jones,* 102 Cal. 506 [36 P. 841], which was a suit for damages based upon two separate grounds, namely, a breach of warranty not to damage plaintiff's property, and a breach of contract not to carry on a competing business in that vicinity, a demurrer to the complaint on the ground that the two

causes were not separately stated was overruled. The Supreme Court held that the demurrer was properly overruled, and affirmed the judgment. Commenting on the fifth subdivision of section 430 of the Code of Civil Procedure, the court said [p. 510]:

"This provision applies to causes of action which cannot be embraced in the same action, though separately stated, and not to causes of action which may properly be joined in the same action under section 427, but which are not 'separately stated,' as required by the last-named section."

We conclude that the amended complaint in this case is not vulnerable to attack by demurrer on the ground that the different causes of intoxication and wilful misconduct were not separately stated, and that the demurrer was therefore properly overruled. The appellant was not thereby prejudiced.

The appellant contends that her motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial, should have been granted because there was a failure to prove that plaintiffs were riding in the automobile as "passengers." It is also argued that the demurrer to the first and second counts of the amended complaint, on the ground of uncertainty, should have been sustained because it could not be determined whether the plaintiffs were riding as paid passengers or as guests. The amended complaint was couched in four counts. The first two alleged that plaintiffs were riding as passengers. The last two counts merely alleged that while they were *riding* in defendant's automobile they were injured as the proximate result of the driver's intoxication and wilful misconduct. The appellant assumes there was a fatal variance between the allegations of the complaint and the proof with respect to the status of plaintiffs as occupants of the machine, and that said motions should therefore have been granted. In support of that theory the appellant has cited *Jenkins* v. *National Paint & Varnish Co.*, 17 Cal.App.2d 161 [61 P.2d 780].

We are of the opinion there is no merit in the foregoing contention under the circumstances of this case. We think the motions were correctly denied and that the demurrer was properly overruled. Originally the owner and driver of the truck, into which the automobile crashed, were made codefendants. They were charged with mere negligence in leaving their truck parked, without warning lights, on the paved portion of the highway. At the close of the evidence the action was dismissed as to the owner and driver of the truck.

348

In separate counts the complaint charged Christine Marquis, the driver of the automobile, with causing the accident by different means. The first two counts alleged that while plaintiffs were riding in the automobile *as passengers,* they were injured by the negligence of the driver. The last two counts alleged that while they were *riding* in the car they were injured as the proximate result of the driver's "intoxication and wilful misconduct." The latter counts were clearly addressed to the liability of the driver of a machine, under section 403 of the Vehicle Code, to a guest, which is limited to causes arising from either intoxication or wilful misconduct. ■ Plaintiffs had the right to allege their causes of action based upon the different theories of ordinary negligence and the limited liability resulting from intoxication or wilful misconduct. The causes were separately stated. The first two causes were founded on the alleged status of plaintiffs as passengers in the car. The latter counts were clearly based on their status as guests of the driver of the machine. We may assume there was no evidence adduced to show that plaintiffs were riding as "passengers," because there is no proof they compensated the owner or driver for their transportation. ■ We must assume plaintiffs were riding as guests as that term is defined in *Kruzie* v. *Sanders,* 23 Cal.2d 237 [143 P.2d 704]. But their status as guests was adequately alleged in the last two counts which charged that their injuries resulted from the intoxication and wilful misconduct of the driver. There was therefore no fatal variance between the allegations and proof in this case, and the said motions were properly denied.

The Jenkins case, *supra,* upon which the appellant relies, is clearly distinguishable from the pleading and facts of this case. In that case the complaint merely alleged that plaintiff's husband, while riding in defendant's automobile "as a passenger," was killed as the result of the driver's *negligence.* That complaint contained no allegation of either intoxication or wilful misconduct of the driver. The evidence clearly showed that the deceased was riding in the machine as a guest, and not as a passenger. At the close of the evidence a nonsuit was granted. A hearing by the Supreme Court was not requested. The appellate court merely held that there was an absence of evidence to prove that the deceased was riding as a passenger, and that the uncontradicted evidence showed he was riding as a guest, but since there was no allegation of intoxication or wilful misconduct necessary to sup-

port liability to a guest, the pleaded cause based only on ordinary negligence was not supported by evidence, and the nonsuit was therefore properly granted. In the present case intoxication and wilful misconduct were pleaded. There was at least an effort to support those allegations by proof of both intoxication and wilful misconduct. The Jenkins case has no application to the situation in this case on account of the difference in the pleadings and proofs. We may assume that if there had been any evidence in the Jenkins case that the deceased was riding as a *passenger* who had compensated the owner or driver of the car for his transportation, that issue would have been submitted to the jury for determination. We assume the nonsuit was granted in that case because there was no conflict on that issue.

Moreover, the present case was tried by all parties on the theory that plaintiffs were riding as guests, and that they could not recover damages unless they proved that their injuries resulted proximately from the alleged intoxication or wilful misconduct of the driver, Christine Marquis. The jurors were examined on that theory. The case was tried and argued on that theory. The jury was instructed *at appellant's request* that, "*It is admitted* the plaintiffs were riding with the defendant Marquis as her guests." Defendant's instruction number 8 properly defined the term "guest." The jury was further instructed with respect to what constitutes intoxication and wilful misconduct. During the trial there was necessarily much evidence adduced with respect to ordinary negligence which was applicable to the defendants, Thomas and Berg, the owner and driver, respectively, of the truck. But, at the close of the evidence the cause was dismissed as to those codefendants. The jury was so instructed, and the court advised the jury that it could not render judgments in favor of plaintiffs unless it determined that the driver of the car, Marquis, was either intoxicated or guilty of wilful misconduct. The jury could not have been misled with respect to the limitation of liability as provided by section 403 of the Vehicle Code. We conclude there was no variance between the pleadings and proof in this case, and that the demurrer was correctly overruled, and that the said motions were properly denied upon the grounds previously stated.

The serious question in this case is whether there is sufficient evidence to support the implied findings of the jury

that the injuries sustained by plaintiffs were the result of the intoxication or wilful misconduct of Mrs. Marquis, the driver of the car in which they were riding as her guests. Upon that subject the evidence is conflicting. We have concluded there is substantial evidence to support those findings.

The plaintiff John Vallortigara drove the machine from Oakland to Oakdale. Mrs. Marquis testified that she had a sandwich and a cup of coffee in Oakland, but did not eat anything after that; that they arrived at Oakdale about 5 o'clock p. m., where they stopped at the Live Oak Café to telephone to the proprietor of the Twain-Harte resort; that she was familiar with the highway, having frequently driven over it for several years past, and that the two-lane highway, in the vicinity of the place where the accident occurred, contained sharp curves and grades; that, at a point about 1,200 feet from the point where the truck was parked the highway curved sharply and then ran down into a considerable depression and upgrade on the opposite side, near the top of which the truck was parked. It was then dark. The atmosphere was full of moisture. The pavement was wet. Mrs. Marquis was driving the car after they left Oakdale. The lights were burning, and the windshield wiper was operating. She said they were then traveling at the rate of about 50 or 55 miles per hour, and that she did not see the truck parked on the highway at any time before her machine crashed into it.

Mrs. Marquis admitted that she drank one 7-Up bourbon highball, on an empty stomach, at the Live Oak Café, a few minutes before the accident occurred. She testified that she did not realize that the liquor affected her driving of the car. When she was asked if she had been conscious of having been affected previously as the result of one drink of liquor she replied, ". . . I don't say that I usually—one drink would affect me that way, but I have—at times, one drink has affected me." In that regard she testified as follows: "Q. You would feel different [after a drink of liquor] than you normally would, wouldn't you? A. Yes. Q. Your reactions would be different than they normally were, wouldn't they? A. Yes. . . . Q. Now, Mrs. Marquis, have you noticed in the past an experience that you have had in taking a drink of we will say, a highball, that the question of whether you had had anything to eat, had any bearing upon the effect that it would have upon you? A. Yes, I would say great effect."

She conceded that the effect upon her of one bourbon high-

ball had been far greater and more apparent if she drank it without food or a substantial meal. The witness had testified they had nothing to eat except a sandwich and a cup of coffee before they left Oakland. While there is a conflict with respect to the effect of that bourbon highball upon her ability to drive the machine safely, there is evidence that she was in fact driving in a reckless manner and at an excessive rate of speed immediately before the accident occurred. Vallortigara drove the car from Oakland to Oakdale. After Mrs. Marquis had the drink of liquor at Oakdale, she took control of the driving. She knew that two-lane highway contained sharp curves and substantial grades. It was dark and misty. The pavement was wet. It was difficult to see distinctly. Her windshield wiper was in operation. Mr. Berg, the driver of the stalled truck (who was an experienced truck operator), hearing her machine approaching, ran back to warn her of the danger of his parked truck. As she came around the curve and down the grade, he said that "she was going fast. . . . I figured at that time she was doing between 90 and 100 [miles per hour]. I don't believe she could have been a-doing a bit under 80. It sounded to me like at that time, from the sound of the motor, it sounded like it was wide open."

We are persuaded there is substantial evidence to support the implied findings that Mrs. Marquis was operating her machine while she was under the influence of intoxicating liquor, and that she was guilty of wilful misconduct which resulted in the accident from which the plaintiffs suffered the injuries complained of. Even though reasonable minds may differ in that regard, this court is not warranted on that account in reversing the findings of the jury and the judgment of the court in denying appellant's motion for judgment notwithstanding the verdict. (*Foerster* v. *Direito*, 75 Cal.App.2d 323, 330 [170 P.2d 986].)

In determining the liability of the operator of an automobile toward a guest, each case necessarily depends upon the particular facts involved. It is true that evidence of ordinary negligence of the driver will not support a judgment for damages in this case because it depends upon proof of intoxication or wilful misconduct. It is also true that evidence of excessive speed of the automobile, standing alone, ordinarily will not constitute wilful misconduct under section 403 of the Vehicle Code. But evidence of excessive

speed under circumstances which infer wilful, wanton or reckless disregard for the safety of guests may constitute wilful misconduct which will support a judgment upon that issue. (*Allen* v. *Robinson,* 85 Cal.App.2d 617, 621 [193 P.2d 498]; *Van Fleet* v. *Heyler,* 51 Cal.App.2d 719, 726 [125 P.2d 586]; *DeLoss* v. *Lewis,* 78 Cal.App.2d 223, 225 [177 P.2d 589].) It has been frequently held that wilful misconduct depends upon the facts of each particular case, but that the evidence adduced, or the reasonable inferences to be drawn therefrom, must show deliberate, intentional, wanton or reckless conduct, or omissions to perform duties, with knowledge, express or implied, that such conduct is likely to result in injury to the guest. (*Cope* v. *Davison,* 30 Cal.2d 193 [180 P.2d 873, 171 A.L.R. 667]; *Candini* v. *Hiatt,* 9 Cal.App.2d 679, 683 [50 P.2d 843]; *Allen* v. *Robinson, supra*; *DeLoss* v. *Lewis, supra*; *Van Fleet* v. *Heyler, supra*; *Norton* v. *Puter,* 138 Cal.App. 253, 258 [32 P.2d 172]; 60 C.J.S. § 399(4) c, p. 1001.)

In the present case, assuming that Mrs. Marquis, with full knowledge of the hazards of the two-lane highway with its sharp curves and grades deliberately and recklessly drove her automobile on a dark and misty night which required the use of windshield wipers, at the grossly excessive rate of 80 miles per hour, around a curve and down a grade, and that she crashed into the rear end of a parked truck, which had red warning lights burning, without seeing it, as substantial evidence indicates that she did, we conclude there is sufficient evidence of wilful misconduct to preclude this court from reversing the findings of the jury and the order of the court upon that issue. That evidence supplies adequate proof charging her with knowledge that such wanton and reckless conduct was likely to result in injury to her guests.

The appellant challenges, as erroneous, three instructions on wilful misconduct given to the jury at the request of the plaintiffs, to wit, numbers 11, 16 and 17, and asserts they are inconsistent with instructions numbered 13 and 15 which were given at the request of appellant. We have read the entire charge to the jury and are of the opinion it was very fully and fairly instructed on all essential issues of the case.

In considering the instructions it should be recalled that, at the close of the evidence, the cause was dismissed as to the codefendants Thomas and Berg, who were respectively the owner and driver of the stalled truck into which the appel-

lant's machine crashed. The last mentioned defendants were merely charged with ordinary negligence.

The appellant pleaded contributory negligence of the plaintiffs as a bar to their recovery. The jury was clearly instructed that even though it found that appellant was guilty of either intoxication or wilful misconduct, plaintiffs could not recover if the jury found that they were also guilty of negligence which proximately contributed in any degree to the injuries received by them. The jury was elsewhere properly instructed regarding the essential elements which constitute negligence, contributory negligence, intoxication and wilful misconduct. At the request of the appellant, the jury was charged in instruction number 8 that, "It is admitted the plaintiffs were riding with the defendant Marquis as her guests," and the term "guest" was therein properly defined. At the request of the appellant the jury was charged in her instruction number 13 that wilful misconduct includes more than the mere intentional or conscious doing of wrongful acts, and that such conduct must also show that the acts were performed with "either knowledge express or implied, that serious injury to the guest probably will result," or it must appear that there was "wanton and reckless disregard of the possible results." Appellant's instruction number 15, which was given to the jury, also states that "A guest may not recover against his or her host-driver," unless her "intentional, wrongful conduct [is] done either with knowledge, express or implied, that serious injury to the guest probably will result, or with a wanton and reckless disregard of the possible results."

We think plaintiffs' instruction number 11 is not erroneous or prejudicial. It does not purport to give all of the necessary elements which constitute wilful misconduct. The jury was elsewhere correctly informed of the necessary elements of wilful misconduct. It merely recites *some of the* *"factors"* which may be considered by the jury in determining whether the appellant was guilty of wilful misconduct. It reads:

"I instruct you that in considering the question as to whether or not the defendant Christine Marquis was guilty of wilful misconduct you may take into consideration all the factors bearing on that question, *such as*, the width and surface of the highway; the extent it curved or angled; the presence or lack of traffic upon it; the time of day or night,

the factor of visibility, the rate of speed with respect to the matters just narrated; and the intent of the defendant Christine Marquis as gathered from the surrounding circumstances and from the evidence with respect thereto." (Italics added.)

The appellant challenges plaintiffs' instruction number 17 as erroneous, chiefly because it leaves the question as to whether knowledge of the appellant that her conduct would likely result in injury to her guests might be inferred by the jury, without stating any standard from which it should so determine. The appellant says in that regard: "The error to be considered arises from the words: 'The jury has a right to infer that the driver had such knowledge . . . if the judgment of the jury so directs.'" But the foregoing quotation deletes the important part of that instruction which clearly supplies the very standard of reasonable inference to be drawn by the jury from the evidence. The instruction is not defective in that regard. It reads:

"I instruct you that when there is a question whether a driver conducted himself with knowledge that serious injury to a guest probably would result from his conduct, proof of such knowledge does not have to be by direct evidence. The jury has a right to infer that the driver had such knowledge, *if such inference may reasonably be drawn from the facts in evidence,* and if the judgment of the jury so directs." (Italics added.)

The appellant evidently overlooked the importance of the preceding italicized language. That instruction clearly states that the knowledge that injury will probably result from the wrongful acts of the driver *may be inferred only when such inference may reasonably be drawn from the facts in evidence.* The language of the instruction conforms to the definition of the term "inference" as it is given in section 1958 of the Code of Civil Procedure, as follows, "An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect." (*Engstrom* v. *Auburn Automobile Sales Corp.,* 11 Cal.2d 64, 69 [77 P.2d 1059]; *Armstrong* v. *Pacific Greyhound Lines,* 74 Cal.App.2d 367, 374 [168 P.2d 457]; 10 Cal.Jur. § 58, p. 735; 20 Am.Jur. § 162, p. 165.) There appears to be no merit in the criticism of the foregoing instruction.

For the same reason we also conclude that plaintiffs' instruction number 16 is a proper statement of the law.

Nor do we find any inconsistency between the preceding instructions of plaintiffs and appellant's instructions num-

bered 13 and 15, which merely purport to be definitions of the term "wilful misconduct" containing correct statements of the essential elements of that term. In determining whether the challenged instructions are erroneous the entire charge to the jury should be read and construed as a whole.

█ When the jury first returned to the court two conflicting forms of verdicts, they were properly informed by the judge in open court that "You have returned two verdicts here and they are not the proper form. You are to return one verdict either in favor of the plaintiffs . . . or a verdict in favor of the defendant." Without objection on the part of either litigant, the jury was instructed to retire and reconsider its verdict. The jury then retired and subsequently returned a verdict in favor of plaintiffs for the sum of $50,000 for Johnson, and the further sum of $60,000 for Vallortigara. That verdict was accepted, filed and entered without objection. The jury was polled and stood eleven to one for the verdict. The court was authorized by section 619 of the Code of Civil Procedure to instruct the jury to retire and correct the original inconsistency of its verdict. There was no error in that procedure.

█ We are unable to hold as a matter of law that the amounts of the verdict are excessive. Indeed, the appellant suggests no specified reason why she deems the amounts to be excessive. We think the amounts are reasonably supported by the evidence. At least they are not so excessive as to indicate that they were the result of passion or prejudice. It has been frequently held that a verdict may not be reversed on the ground that it is excessive, unless it clearly appears to be the result of passion, prejudice or corrupt influence. That rule is particularly applicable where the trial court has passed on that issue, as it did in the present case, when the motion for judgment notwithstanding the verdict and the motion for new trial were denied. (*Mahar* v. *MacKay,* 55 Cal.App.2d 869, 878 [132 P.2d 42] ; *Tyson* v. *Romey,* 88 Cal.App.2d 752 [199 P.2d 721].)

For the foregoing reasons the judgment and order denying motion for judgment notwithstanding the verdict are affirmed.

Peek, J., and Adams, P. J., concurred.

A petition for a rehearing was denied September 15, 1949, and appellant's petition for a hearing by the Supreme Court was denied October 13, 1949.