(December 2, 1901.)

## IDAHO MERCANTILE COMPANY v. KALANQUIN.

[66 Pac. 933.]

LEADING QUESTIONS.—Section 6077 of the Revised Statutes of 1887, defines a leading, or suggestive, question as one which suggests to the witness the answer which the examining party desires.

CROSS-EXAMINATION.—Where material allegations of complaint are denied by the answer, defendant may cross-examine plaintiff's witnesses to disprove such allegations.

CONTENTS OF WRITING.—Before the contents of a written bill of particulars can be given in evidence, its absence or loss must be accounted for.

VALUE OF GOODS SOLD AND DELIVERED.—The value of goods alleged to have been sold and delivered. may be proved by any competent evidence, oral or written.

EVIDENCE.—The positive testimony of witnesses of equal credibility should have more weight than the testimony of those who "don't remember," or are not sure of their facts.

EVIDENCE.—In proving a contract, all of the facts and circumstances tending to prove it ought to be allowed in evidence.

MISLEADING INSTRUCTIONS.—It is error to give misleading instructions.

VERDICT.—Where there is no substantial conflict in the evidence, and it is clearly against the verdict, the judgment will be reversed.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

Charles L. Heitman and James Graham, for Appellant.

"A question which suggests to the witness the answer which the examining party desires is denominated a leading or suggestive question." (Idaho Rev. Stats., sec. 6077.) The denial of each allegation controverted must be specific. (Idaho Rev. Stats., sec. 4183.) "A failure to deny specifically each and every material allegation of a verified complaint admits the allegation not so denied." (*Norris v. Glen,* 1 Idaho, 590; *Lillienthal v. Anderson,* 1 Idaho, 673.) That defendant specifically denies does not of itself make a specific denial. "The denial of indebtedness without a denial of the facts alleged in

the complaint out of which such indebtedness arose or follows is a conclusion of law and raises no issue of fact." (*Swanholm v. Reeser,* 3 Idaho, 476, 31 Pac. 804; *Nelson v. Murray,* 23 Cal. 338; *Turner v. White,* 73 Cal. 299, 14 Pac. 794.) The fourteenth assignment of error is that the court erred in refusing to give appellant's fourth instruction, which reads as follows: "The court instructs the jury as a matter of law that, when witnesses are otherwise equally credible, and their testimony entitled to equal weight, greater weight and credit should be given to those who swear affirmatively or positively to a fact, rather than to those who swear negatively or to a want of recollection." (*Pool v. Devers,* 30 Ala. 672; *Blizzard v. Applegate,* 61 Ind. 368.) A letter containing an offer, and evidence establishing the performance of the service stipulated for in the offer, proves a contract in writing. (*Hooker v. Hyde,* 61 Wis. 204, 21 N. W. 52.) The assent of both parties to a contract may be inferred from their conduct. (*Phillip v. Gallant,* 62 N. Y. 256; *Smith v. Hughes,* L. R. 6 Q. B. 597; 7 Am. & Eng. Ency. of Law, 2d ed., 129; *Idaho Mercantile Co. v. Kalanquin,* 7 Idaho, 295, 62 Pac. 925.) When a contract, which lacks mutuality in its inception, is subsequently corrected, in this particular by act of the parties, and is executed, all questions arising from this defect are put at rest. Want of mutuality is no defense to an executed contract. Want of mutuality in the inception of the contract may be remedied by the subsequent conduct of the parties, or by the execution of the agreement. (*South etc. R. R. v. Highland Ave. etc. R. R.,* 98 Ala. 400, 39 Am. St. Rep. 74, 13 South. 682; *Muscatine Water Co. v. Lumber Co.,* 85 Iowa, 112, 39 Am. St. Rep. 284, 52 N. W. 108; *Nutting v. McCutcheon,* 5 Minn. 382; *Willetts v. Insurance Co.,* 45 N. Y. 45, 6 Am. Rep. 31; *Grove v. Hodges,* 55 Pa. St. 504; *Jones v. Durgin,* 16 Mo. App. 37; *Welch v. Whelpley,* 62 Mich. 16, 4 Am. St. Rep. 810, 28 N. W. 744; *Stone v. United States,* 94 U. S. 76.)

John B. Goode and Willis Sweet, for Respondents.

The witness Roche was asked the following questions on cross-examination: "Did you ever see Mr. Kalanquin's second

contract with the Northern Pacific Railway Company?" Appellant objected to the question on the ground that it was irrelevant and immaterial. The statute requires of counsel at the trial that he point out why any testimony sought to be elicited is objected to. It is not sufficient that counsel say: "Objected to on the ground that it is immaterial and irrelevant." A parrot might do that. But why is a question immaterial or irrelevant? Without the reason being given the objection is worthless. (*Dunning v. Rankin,* 19 Cal. 644; *Kiler v. Kimbal,* 10 Cal. 268.) After the testimony of appellant was all in, counsel for respondent moved for a nonsuit. This motion was based upon the following status of the case at that time: Appellant relied in the lower court upon the alleged verbal contract, made on the eighteenth day of March, 1899. If it proved a contract at all, it was a continuation of the terms of the old contract, by ratification, after May 1, 1899. Respondent contended then, and contends now, that the variance between the allegations of the complaint and the testimony offered in support thereof are so at variance as to be fatal to appellant's cause. (Rev. Stats., sec. 4225; *Stout v. Coffin,* 28 Cal. 65; *Butler v. Bates,* 7 Cal. 137; *Tomlinson v. Monroe,* 41 Cal. 94.)

SULLIVAN, J.—This is the second appeal in this case. The judgment of nonsuit in favor of defendant, who is respondent here, was reversed, and the cause remanded for a new trial. The opinion is found in 62 Pac. 925. The issues made by the pleadings are stated in that opinion, and will not be repeated here. A new trial was had, and the verdict and judgment were in favor of the defendant. This appeal is from the judgment and order denying a new trial.

Assignments of error 1 and 2, we think are well founded, and the court erred in refusing to let the witness answer said questions. Those questions are not leading, as they are not suggestive of the answer.

The third error assigned in the transcript is not referred to in brief of counsel, and is waived.

The fourth and ninth assignments of error refer to the right of counsel for defendant to cross-examine a witness for the plain-

tiff to contradict the material allegations of the complaint; counsel for appellant contending that the denials in the answer are not sufficiently specific to raise an issue of fact, and for that reason such cross-examination was not proper. Those assignments are not tenable, as the answer, taken as a whole, puts in issue the making of the contract sued on, and that was a very material issue—the issue or fact upon which all other allegations of the complaint were based. While the answer is not a model in pleading, yet we think it sufficient to put in issue the material allegations of the complaint.

There was no error in the rulings of the court set forth in the fifth and seventh assignments of error.

The tenth assignment of error is well taken. There was not a sufficient showing of the loss of the bill of particulars, containing an itemized statement of the goods and cash furnished defendant by plaintiff. It was not shown that it was lost or destroyed without the fault of defendant, and that he was unable to procure a copy thereof.

The court erred in refusing to permit the witness James Roche to answer the question set forth in the eleventh assignment of error.

The twelfth assignment involves a motion to strike out all of the evidence of defendant as to amount of goods furnished by plaintiff. All competent evidence tending to prove the value of such goods should have been admitted. It appears from this assignment that the court held that, so far as defendant was concerned, he might prove the value of said goods by oral evidence, and the plaintiff must prove such value by written evidence. If such was the ruling, it was error. The value of said goods may be established by any competent evidence, either written or oral. The best evidence obtainable must always be produced.

The modification of the second instruction requested by plaintiff is the thirteenth error assigned. The modification was merely a repetition of instructions given at the request of both appellant and respondent, and, while it was not proper to repeat them, we do not think it was prejudicial error. A court

may, however, prejudice a jury by unnecessarily repeating an instruction, and therefore repetition ought to be avoided.

The refusal to give the following instruction is the fourteenth error assigned: "The court instructs the jury as a matter of law that, when witnesses are otherwise equally credible and their testimony entitled to equal weight, greater weight and credit should be given to those who swear affirmatively or positively to a fact, rather than to those who swear negatively or to a want of recollection." That instruction is applicable to the positive testimony of the witnesses Sander and Roche, and the testimony of defendant, who testified to conclusions and to a want of recollection, and should have been given.

The refusal to give the fifth instruction requested by plaintiff is assigned as error. This instruction was properly refused, because each of the witnesses were interested in the final result of the suit. The fifth instruction requested by the plaintiff was properly refused by the court.

There was no error in the modification of the seventh instruction requested by plaintiff, and giving the same as modified.

Under the evidence it was error to refuse to give the ninth instruction requested by the plaintiff, for the evidence shows that, after receiving a written statement or bill of particulars of the tie account from the appellant, the defendant turned over vouchers to appellant amounting to several thousand dollars, and did not question the correctness of said statement of account, at least to the officer of the appellant.

The refusal to give the following instruction asked by plaintiff is assigned as error, to wit: "The court instructs the jury that the second cause of action in plaintiff's complaint, to the amount of sixty-two dollars and sixty-five cents, has been proved by plaintiff and admitted by defendant, and its payment has not been shown by defendant." The second cause of action stated in the complaint was for sixty-two dollars and sixty-five cents for goods and cash delivered and paid to defendant, and was not denied by the answer—was proved by the plaintiff, and no evidence whatever was introduced by defendant on that point. The instruction should have been given.

The giving of defendant's instruction No. 3 was error. Not only the conversation between the parties in making the contract alleged in the complaint and testified to on the trial, but all of the facts and circumstances in regard to carrying out the contract testified to before the jury, were proper evidence for them to consider in arriving at a verdict as to whether the alleged contract was entered into or not; and it was error to attempt to confine the jury's consideration to just the conversation had between the parties. The subsequent acts of the parties, tending to carrying out the alleged contract testified to on the trial, was proper evidence to be considered by the jury. The declarations of the parties were not the only evidence of the alleged contract; but all of the facts and circumstances shown by the evidence, which tend to show that such a contract was made, ought to have been given to and considered by the jury.

It was error to give the fourth instruction requested by defendant, as it conveyed the impression to the jury that only one witness had testified to the alleged contract, when as a matter of fact there were two. The instruction was misleading and should not have been given.

The insufficiency of the evidence to sustain the verdict is assigned as error. This assignment is well taken. Witnesses Roche and Sander both testify to a conversation they had with the defendant in regard to his second tie contract. Those witnesses state what was said in those conversations, thus clearly indicating that the second contract was to be shared in by the plaintiff, the same as in the first contract, and their subsequent acts clearly show that such was the understanding. The plaintiff continued to furnish supplies and pay tie choppers for getting out ties, and the defendant made reports to and turned over vouchers to the plaintiff, the same as under the first contract, until the final voucher was received by him, which he refused to turn to the plaintiff. Plaintiff furnished over $6,000 in goods and merchandise, and paid upward of $8,000 in cash on the second contract, as shown by a great preponderance of the evidence; and all there is to contradict it is the evidence of

the defendant, which is most unsatisfactory, and we do not think amounts to a contradiction of it. The defendant admits that he had a conversation with Roche about the second contract, and that he left the letter with him whereby the timber agent of the Northern Pacific Railway Company informed him that the railroad company would take all of the ties he could deliver prior to August 1, 1899. Roche and Sander both testified to the conversation that took place when said letter was presented, as to what defendant said and what they said. Roche testified that defendant came into plaintiff's office, and said: "I have got another contract for ties. There's a letter from Mr. Willis, the timber agent of the Northern Pacific Railway"—and handed witness the letter. At that time witness Sander was not in the office, but Roche called him into the office. After Mr. Sander came in, witness asked defendant if they came in on that contract, and the defendant replied: "Yes, we will go along with this as usual." Witness asked: "Do we come in on the additional cent also?" Defendant replied: "Yes, when I am in with men I believe in share and share alike—in sharing up with them." Witness replied: "That is nice, Mr. Kalanquin. We will try and do the best we can for you." Sander testified as follows: "I have personal knowledge about the verbal contract that is in controversy in this action. I know that in March, 1899, Mr. Roche requested me to come up into the office, and handed me the letter from Mr. Willis—the same letter produced in evidence here, and now handed me [marked "Plaintiff's Exhibit 'B' "], which is the letter I now refer to. Mr. Kalanquin was there at the time, and stated he had received a new contract from the Northern Pacific Railway Company for some ties, and asked me if we wanted to go in on that contract on the same terms and conditions as the previous contract; that is, this written contract for thirty-five thousand cross-ties. But I saw from the letter that there was an additional one cent for all the ties he would get out. I said we would go in on the contract on the same terms and conditions as the other. We were to share alike in the profits, which would give us an additional one cent for the ties; and we talked over the contract for a while, and I asked Mr. Kalanquin how

many ties he had in view he would be likely to get out, and he said there were more than enough to fill the contract. I said, under these conditions, we were perfectly willing to go in with him and I asked him if everything was satisfactory. He said it was all satisfactory, and had been. On that occasion I had conversation with Mr. Roche in Mr. Kalanquin's presence about this verbal contract. After Mr. Kalanquin and I had had our talk in regard to getting out the ties, I told Mr. Roche that we had concluded to go in on the new contract on the same terms and conditions as the other, and we were to share equally in the profit; and Mr. Kalanquin acquiesced in that in his presence. I don't remember the exact words that Mr. Roche used in reply, but 'Very good,' or 'all right.' " In regard to said conversations the defendant Kalanquin testified as follows: "I had no conversation with any other person or persons in regard to that letter, when I received it, only just with Mr. Roche. The occasion of my showing it to Mr. Roche, and having conversation with him in regard to the letter, was: Of course, I was in the store back and forth, sometimes two or three times a day. The men coming in there to buy goods, I showed him this letter I had received from the railroad company. I remember that Mr. Roche said it was a pretty nice letter. I did not at that time make any agreement with Mr. Roche, nor with the Idaho Mercantile Company, in regard to the execution of any contract I had secured. I don't think Mr. Sander was present when I had the conversation with Mr. Roche. I don't remember he was there. I don't remember of any conversation with Mr. Sander. I have no recollection of it, anyway." The defendant then testified that he did not make an agreement with Roche or the plaintiff in regard to execution of any contract he had secured. That is a legal conclusion. He does not deny that he had the conversation testified to by Roche. He undertook to deny that Sander was present during said conversation. He testified that he did not think Sander was present. He testified as follows: "I don't think Mr. Sander was present when I had the conversation with Mr. Roche. I don't remember he was there. I don't remember

of any conversation with Mr. Sander. I have no recollection of it."

This testimony of the defendant does not amount to a contradiction of the positive testimony of the witnesses Roche and Sander. "I don't remember." "I don't recollect," is the substance of his testimony, and he denies that any agreement was made at that time. How does he know that no agreement was made, when he does not remember the conversation? If he remembered the conversation, and testified to it, the court and jury then would be able to determine whether a contract was made from the conversation had. If the conversations testified to by Roche and Sander took place, a contract was made; and it is not denied by the defendant, except by his conclusion that no agreement was made, which is no denial whatever of the facts and conversations testified to by Roche and Sander. The evidence being overwhelmingly in favor of the plaintiff's causes of action, and there being no substantial conflict in it, the judgment must be set aside, and a new trial granted; and it is so ordered.

We have considered all of the errors presented by appellant's brief. Costs of this appeal are awarded to appellant.

Quarles, C. J., concurs.

STOCKSLAGER, J., Dissenting.—I am unable to agree with my associates in the final conclusion reached in this case. The material question involved in the trial of this case was whether or no appellant had an interest in the second contract of respondent with the Northern Pacific Railway Company to furnish ties for the use and benefit of said company. There is no evidence that throws any light on this question, excepting the testimony of James Roche and V. W. Sander on behalf of the plaintiff (appellant), and the testimony of Charles Kalanquin (respondent). James Roche testifies that he is secretary and treasurer of plaintiff, and V. W. Sander testifies that he is the president of the company, which is a corporation. They both testify positively to a contract with the respondent, fixing a time and place when and where such conversation was had, and,

if true, this was sufficient to create a contract, and enable the plaintiff (appellant) to recover in this action. The respondent testifies he had a conversation with Roche, but does not remember conversation with Sander; gives the conversation as he remembers it with Roche, but insists that no contract was made. If his statement of the conversation between himself and Roche is true, then no contract was made. There is no dispute about the time and place of the conversation between Roche and Kalanquin, and it is not urged that there was a contract, unless it grew out of that particular conversation. If Kalanquin had a conversation with either Roche or Sander, as testified to by them, he had not forgotten it at the time he testified on the trial; and this applies with equal force to the testimony of Roche and Sander. So far as we know, or as is disclosed by the record, the jury did not consider who was mistaken about the conversation, but who was telling the truth about it. They were called and sworn to pass upon this question, and did pass upon it, finding for the defendant. What right has this court to disturb this finding, when there is nothing to show bias or prejudice for or against either party to this suit? This court has repeatedly said that where there was a substantial conflict in the evidence the verdict of the jury would not be disturbed. As I read the evidence as disclosed by the record, there is a substantial conflict here. The testimony of witnesses all looks alike on paper, as we have it. It is different with the jury, the members of which have the opportunity of looking the witnesses in the face when testifying. My experience is that they are as capable of passing upon the credibility of witnesses as the members of this or any court.

It is true, as stated in the opinion of associates, " the appellant continued to furnish supplies and pay tie choppers for getting out ties, and the defendant made reports to and turned over vouchers to the plaintiff, the same as under the first contract, until the final voucher, . . . . which he refused to turn to the plaintiff." To my mind there is nothing unusual or strange in this. The plaintiff was selling its goods to the tie choppers, paying out its money, and receiving the vouchers as

they came into the hands of defendant; hence had ample security in the vouchers for goods sold or money advanced. Is it not fair to assume that the plaintiff was selling its goods to the tie choppers at a profit of about twenty per cent? If so, there was twelve hundred dollars in the transaction for it, with security for the payment of its goods and money advanced. I apprehend any merchant doing business in that country would furnish the goods and advance the money, as was done by the plaintiff for defendant, for the profit received from the sale of goods. I think the finding of the jury that there was no contract should be final in this case, and the judgment of the lower court should be affirmed.