JOHANNES B. VANDERKRUIK, ADMINISTRATOR (ESTATE OF JOHANNES F. VANDERKRUIK) *vs.* ARTHUR MITCHELL ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued June 6th—decided July 16th, 1934.

*Raymond E. Baldwin,* for the appellants (defendants. Mitchell).

*David Goldstein,* with whom was *John P. Flanagan,* for the appellee (plaintiff).

HAINES, J. Giving the verdict the fullest support to be had from a favorable interpretation of the evidence, we conclude that the jury could reasonably have found: that the plaintiff's decedent was a gratuitous passenger in the Mitchell automobile operated by Arthur Mitchell, at half past twelve on the morning of November 3d, 1933; he was seated on the right end of the front seat and between him and the driver was another passenger; the seat was a wide one and furnished room for the three occupants without interfering with the operation of the car; Arthur Mitchell and the young lady seated at his right, together with the decedent and another young lady, had attended a church entertainment and were on their way home; decedent's companion had been left at her home and the minister of the church had also been taken to his home; the car was being driven easterly on State Street in the city of Bridgeport and approaching Park Avenue, which intersects it at a right angle. At the same time the Matus car, driven by Charles Matus,

was proceeding north on Park Avenue and approaching the same intersection; State Street at this point is approximately forty-six feet wide and Park Avenue approximately fifty feet wide; both are hard surfaced roads and double trolley lines are located substantially in the center of each street; State Street is a main artery for trucks using the Boston Post Road through Bridgeport, and Park Avenue is the main artery for cross-town traffic in that city; the intersection is about a half mile from the center of the city and the vicinity is thickly settled; traffic is to be anticipated at any time on both streets; there are no traffic or signal lights at the intersection but an arc street light was in operation at the southwest corner; also at the southwest corner is a church which obstructs the view from an automobile moving easterly on State Street, so that northbound traffic on Park Avenue is not observable until a point somewhere near the intersection is reached.

The cars collided inside the intersection, neither driver seeing the other car until they were within ten feet of each other; it does not appear that either driver sounded a horn or otherwise gave notice of his approach to the intersection; nor does it appear which entered the intersection first and it could have been reasonably inferred from all the circumstances that their entrance was practically simultaneous; at the moment there was no other traffic in or near the intersection; the weather was clear and the streets dry, and so far as appears, lights and brakes upon the cars were in good working order; in short, there is nothing in the evidence to show that the attention or free and normal action of the drivers was in any way interfered with. There is no evidence of any warning, caution or protest directed to Mitchell regarding his driving of the car, the speed of which is established

at from forty-five to fifty miles per hour, while the speed of the Matus car was approximately thirty miles. The cars came together and the Mitchell car turned over twice, caught fire and came to rest on its side, pinning the decedent underneath, and he died soon after from injuries thus received.

The main contention of the defendants in this appeal is that the conduct of the driver of the Mitchell car was not such as to create liability to the plaintiff under our guest statute, which exempts the owner or operator from responsibility to a gratuitous passenger for injuries "unless such accident shall have been intentional . . . or caused by his heedlessness or his reckless disregard of the rights of others." General Statutes, § 1628. Interpreting the latter phrase in accordance with what we conceived to be the legislative intent, we have held it to mean "or caused by his heedless and his reckless disregard of the rights of others." *Bordonaro v. Senk,* 109 Conn. 428, 430, 431, 147 Atl. 136. We are not concerned in this case with the provision regarding intentional misconduct, since no claim is made on that score, but we are faced with the question whether the conduct of Mitchell as reflected in the foregoing summary of facts could reasonably and logically be held to have been heedless and reckless and in disregard of the rights of the decedent.

It was incumbent upon the plaintiff to prove his case by a preponderance of the evidence and if the evidence was in equipoise, or evenly balanced, the plaintiff could not prevail. There was no evidence that the Mitchell car was in any way defective as to brakes, lights or otherwise. State Street and Park Avenue were both straight, level and dry, and of ample width, and there was little or no traffic at that time in the morning. The jury would have been justified in finding that Mitchell was negligent in failing

to slacken speed and bring his car under control as he approached and entered the intersection; in failing to note sooner than he did the approach of the Matus car from his right; and in failing to give a warning signal of his approach in view of the position of the church upon the corner and of the probability of traffic suddenly appearing on one or both of these important avenues of travel. The failure to do one or all of these things was clearly a contributing cause of the accident, and were proof of negligence all that was necessary to give the plaintiff a verdict, we could not say that the jury erred.

However, a plaintiff's verdict can only be sustained by proof of something more than negligence. The evidence must show an indifference to the consequences of the driver's conduct, or a reckless disregard of or indifference to the safety of the passenger. *Berman* v. *Berman,* 110 Conn. 169, 171, 147 Atl. 568; *Bordonaro* v. *Senk, supra.* As we read the evidence, we cannot escape the conviction that Mitchell's conduct was attributable merely to thoughtlessness, inadvertence or an error of judgment, and cannot fairly be said to have been a heedless and reckless disregard of the safety of his friends who were with him. *Coner* v. *Chittenden,* 116 Conn. 78, 82, 163 Atl. 472; *Anderson* v. *Colucci,* 116 Conn. 67, 73, 163 Atl. 619; *Ascher* v. *Friedman, Inc.,* 110 Conn. 1, 3, 147 Atl. 263; *Silver* v. *Silver,* 108 Conn. 371, 376, 143 Atl. 240; *Upson* v. *General Baking Co.,* 113 Conn. 787, 789, 156 Atl. 858.

It is apparent that Mitchell was unaware of the danger from the Matus car until too late to avoid it; he did not deliberately and knowingly assume the risk of collision with it. In *Potz* v. *Williams,* 113 Conn. 278, 281, 155 Atl. 211, we pointed out that it was a question of fact for the jury whether the driver was aware or should have been aware that he was likely

to fall asleep while driving, and where this knowledge was established and an accident afterward resulted from his being asleep, his driving could be considered as heedless and reckless misconduct within the statute. He voluntarily assumed a risk of which he was well aware.

There is no evidence that Mitchell received any warning, protest or caution as to his handling of the car. In *Berman* v. *Berman, supra,* the car was being driven rapidly upon a road which was wet and slippery with snow and the driver was requested by the passenger to slacken his speed, but refused. Twice the passenger requested him to stop and permit her to get out, but he refused. He knowingly incurred the danger and we held such conduct to be within the statute. In *Meyer* v. *Hart,* 110 Conn. 244, 247, 147 Atl. 678, where the car was driven down a very steep hill while the pavement was wet, at high speed, approaching an intersection and the passenger cautioned the driver and requested him to drive more slowly, we held his refusal and persistence in the face of a known danger was heedless and reckless misconduct. Nor does the evidence satisfy us that Mitchell at any time exhibited a willingness to endanger the safety of his passengers or an indifference to the consequences of his conduct. In *Ascher* v. *Friedman, Inc., supra,* we said (p. 4): "In her haste to get home before the threatened thunder-storm broke, the driver of this car turned from the street into the driveway without slackening her speed, with the result that the car failed to make the turn and mounted the curb. The accident was the result of a momentary bit of careless driving, a failure to exercise due care. There was nothing in the conduct of the defendant to indicate that she was operating the car with reckless disregard of the rights or safety of her own children and of her

sister who were riding with her." Nor are we able to gather from the evidence that Mitchell was guilty of what could properly be characterized as wanton or wilful misconduct under the circumstances. *Grant* v. *MacLelland,* 109 Conn. 517, 520, 521, 147 Atl. 138; *Ziman* v. *Whitley,* 110 Conn. 108, 110, 147 Atl. 370.

In short, the evidence discloses that the primary cause of the collision was the thoughtless and careless maintenance of high speed at a point where due care required that it be reduced, but as held, in effect, in the *Ascher* case, speed alone does not spell a reckless operation of the car within the meaning of the statute. In *Siesseger* v. *Puth,* 213 Iowa, 164, 239 N. W. 46, where high speed was the cause of the accident, the court reached the same conclusion. The term "reckless operation" which is used in the guest statute of that State was discussed at length and many decisions, including two of our own, were cited. In *Van Blaircum* v. *Campbell,* 256 Mich. 527, 239 N. W. 865, it was held that a speed of forty-five miles an hour, if conceded to be negligent, does not nevertheless constitute "wilfulness or wantonness." In that case the driver did not see a "trailer" which reasonable care required him to see, and because of his speed, he was unable to avoid striking it.

We conclude that the verdict of the jury cannot be supported as a logical and reasonable one upon the evidence, and that the motion to set it aside should have been allowed. This being so, it is unnecessary to consider other assignments.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.