[Civ. No. 10124. Second Appellate District, Division Two.—June 6, 1935.]

LAWRENCE GIESELMAN, Jr., by His Guardian ad Litem, etc., Appellant, v. JOHN UHLMAN et al., Respondents.

Ben M. Goldman and Samuel R. Leemon for Appellant.

Joe Crider, Jr., for Respondents.

CRAIL, J.—This is an appeal from a judgment in favor of the defendants in an action for damages for personal injuries arising out of an automobile collision. It is a so-called "guest" case in which the defendants are charged with wilful misconduct. After the evidence was closed the defendants moved for a directed verdict, which motion the court granted and judgment was entered for the defendants upon the directed verdict. It is the contention of the plaintiff that the evidence was such that the court should have submitted the question of wilful misconduct to the jury. We have reviewed the record and believe the plaintiff's contention should be sustained and the judgment reversed. Because we believe the judgment should be reversed we shall set forth the facts and circumstances in evidence somewhat in detail (a task which the writer of this opinion ordinarily does not deem necessary or efficient where the judgment of the trial court is to be affirmed).

Viewing the evidence in the light most favorable to the plaintiff, the accident occurred on a highway in Los Angeles at a place where two sets of parallel steam railroad crossings about 235 feet apart intersect said highway. The accident happened about midnight on a dark night. A heavy mist was settling on the road. Both the road and the windshield of the auto were damp. The driver, defendant John Uhlman, in describing the thickness of the fog, testified, "Well, you couldn't make out what things were. You could maybe see it, but you wouldn't know what it was or how far away it was." The plaintiff was a guest of the said defendant, a minor, and the car was being driven by said defendant with the consent of his parents, who are also defendants. As he approached the first railroad crossing the driver swiftly passed around an automobile proceeding in front of him. A train was seen approaching on the second railroad track when the defendant's automobile was approximately 250 feet from the place of the collision. Plaintiff said, "Do you think we can make it?" And the driver said, "Sure I can!", and increased his speed to 55 or 60 miles per hour. Cars were

already parked on both sides of the second track waiting for the train to pass. At a point 150 feet before the collision plaintiff yelled, "Stop! Look out! There is a car!" The driver did not reduce his speed but kept gaining speed steadily above the 55 or 60 miles per hour he was already going, and about 100 feet from the collision started swerving from one side of the highway to the other. The defendant stated in his testimony that when he arrived at a point about 15 feet from the parked car which was waiting at track number two he knew he would crash into it. He had this knowledge in spite of the fact that there was room to go on either side of said car. When the collision occurred the front end of the defendant's car went straight up in the air, came down and stayed where it hit, but the car which it struck was thrown across the railroad track and 25 feet beyond. The plaintiff went through the windshield and was seriously injured. The train on the second railroad track passed over the highway immediately after the crash.

It seems rather apparent from the above that reasonable men might well believe that the driver, when he stepped on the gas and accelerated the speed even above the 60 miles per hour which he was already going, knew or should have known that by doing so he was putting his car out of control in the event that stopping would be necessary; that he was discarding prudent driving even had the night been clear and the road dry. We have in mind the case of *Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194], in which the Supreme Court adopted what it calls a satisfactory definition of wilful misconduct. It seems to us that it was a question for the jury to determine whether the driver in deciding to beat the train under conditions which necessitated such a desperate rate of speed, placing his car out of control without any possibility of stopping within a safe distance and ignoring the warnings of the plaintiff, intentionally did something in the operation of a machine which should not have been done under circumstances disclosing knowledge, express or to be implied, that an injury to the plaintiff would be a probable result. We believe that under all the facts and circumstances in evidence it was for the jury to determine whether the driver was trying to avoid the collision or whether he was intentionally doing what he did with a knowledge then in

his mind that a serious injury would be a probable (as distinguished from a possible) result; or at the least with a wanton and reckless disregard of its possible result.

Judgment reversed.

Stephens, P. J., and Fricke, J., *pro tem.*, concurred.