[Civ. No. 4306.   Fourth Dist.   May 21, 1951.]

GLADYS JONES, Respondent, v. MELVIN W. HARRIS, Appellant.

Maddox & Abercrombie and Erling H. Kloster for Appellant.

O. L. Duemler, Ward G. Rush and Leo V. Killion for Respondent.

MUSSELL, J.—Plaintiff, while riding as a guest in a Chevrolet automobile operated by defendant Harris, was severely injured when it collided with a Studebaker car operated by defendant Auer. The accident occurred at about

2:30 a. m. May 29, 1949, on U. S. Highway 99 about 1 mile south of Pixley. A jury returned a verdict in favor of plaintiff and defendant Harris appeals from the judgment which followed.

The arguments relied upon by appellant are (1) that as a matter of law there was no substantial evidence to support a verdict, based upon the alleged wilful misconduct of appellant or upon which the jury could have found that his alleged intoxication proximately resulted in plaintiff's injuries; and (2) that there was prejudicial error in the refusal to give an offered instruction as to contributory negligence as a defense to liability based on intoxication.

On May 28, 1949, at about 10 o'clock p. m., appellant called at a cafe in Tipton where plaintiff was employed as a cook and invited her to go with him to the Shamrock Café at Pixley, about 5 miles north of Tipton on U. S. Highway 99. Plaintiff accepted the invitation. They stopped at a café en route where each had a highball. Upon arriving at the Shamrock Cafe, Harris and plaintiff had another drink and danced together. Harris then resumed his duties as manager of the café and until about 2 a. m. assisted the bartender, mingled with the customers and had a few more drinks. The bar and café were crowded. Plaintiff saw Harris dancing at times and working behind the bar but did not see him take more than one drink during the evening. Plaintiff danced, "sipped" a drink, played shuffleboard, and at about 1 a. m. told Harris that she was tired and would wait for him in his car. She was asleep in the automobile when, at about 2 a. m., after the café was closed, Harris, with Mr. and Mrs. Henderson, who worked in the café, came out of the café. The Hendersons seated themselves in the back seat of the automobile and with Harris at the wheel and plaintiff beside him in the front seat, they proceeded south on U. S. Highway 99. The accident occurred on this highway about 1 mile south of Pixley. At this point the highway runs generally north and south. It was straight and level and consisted of two lanes, each 9 feet wide with improved shoulders, each 6 feet wide. There was also 40 to 45 feet of smooth dirt immediately west of the west shoulder. At the time of the accident the northbound traffic was very heavy. Immediately prior to the collision defendant Auer, who was driving north in a Studebaker convertible, pulled out to his left across the white line into the southbound traffic lane and attempted to pass a truck and trailer traveling north in its proper traffic lane. When Auer pulled out he saw

the lights of the Harris car coming toward him and estimated that it was between a half and three quarters of a mile away. He testified that as he was passing the truck he saw that he "wasn't going to be able to clear" because of the oncoming car; that "He (Harris) was coming at a terrific rate of speed and I didn't see my way clear, and there was cars in front of the truck and trailer, and I seen that, and I knew I couldn't make my way. So I swung over to the left real quick to avoid a head-on collision with Mr. Harris' car, and I applied the brakes a little bit to slow down and get off the highway so that Mr. Harris' car could pass."

Plaintiff was "drowsy" when Harris got into the car with her and did not then observe anything indicating that he was intoxicated. She testified that as they left Pixley, she observed a car coming towards them and that Harris was close to the white line; that "He was in his lane, and when this car came up it was awfully close, and I did make the remark to him 'Why don't you pull over a little bit Harris? You are crowding the white line' is what I said, I believe"; that Harris replied "The hell with you, I am driving this car"; that she then noticed that he was "pretty intoxicated." Harris was then driving about 60 miles an hour. Shortly thereafter plaintiff saw another car coming towards them around the northbound traffic, trying to get around a truck. She testified that "As we got nearer and the car couldn't get by, couldn't get over in its own lane, the highway was plenty wide there for Harris to get over on the shoulder and even off the shoulder. I remarked to him, 'Harris, why don't you pull over and let that fellow get by?' or something to that effect. Because he had plenty of room to pull over on the shoulder or beyond"; that Harris said "To hell with the son of a bitch. I am on my side of the road"; that Harris didn't do anything with reference to changing the course of his car and that she heard him say: "Brace yourself. I am going to hit him"; that she did not remember anything that happened thereafter until after the accident.

The two cars came together in the center of the west shoulder of the highway about 12 feet west of the center line, and each was damaged at the right front end. There were skid marks on the west shoulder 39 feet in length made by the Auer car before the impact. It was off the roadway and almost at a stop at the time of the collision. Auer testified that when he turned off the paved portion of the highway, the Harris car was "a good city block away." A traffic officer

found no skid marks made by the Harris car and that there was no physical evidence that it was on the shoulder until just at the point of impact. Harris testified that he applied his brakes just as Auer hit him.

Witnesses who observed Harris after the accident testified that he was intoxicated, and his blood analysis showed an alcoholic content of 2.0 milligrams per c. c. of blood. A physician testified that this test indicated that the person from whom the sample was taken was certainly intoxicated. In this connection, appellant admits in his opening brief that there was enough evidence for a jury reasonably to find that he was intoxicated.

■ Our province here is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support the findings and judgment, and to indulge all intendments and reasonable inferences which favor sustaining the findings of the jury. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].) ■ We are asked to hold that as a matter of law there was no substantial evidence to support the verdict of the jury. This we cannot do. There was substantial evidence that Harris was driving at an excessive rate of speed when passing heavy oncoming night traffic; that he "crowded" the white line; that he was requested by plaintiff to pull over a "little bit" when meeting a car before the accident; that although there was ample space and opportunity for Harris to turn his car out of the path of the Auer convertible and avoid the accident, he refused to heed plaintiff's request that he pull over and let the Auer car by; that he deliberately continued southward heading straight toward Auer until it was too late to avoid the crash.

■ Wilful misconduct is divided into two distinct lines of action, either of which will render a driver liable to his guest for its results, as follows: first, "the intentional doing of something with a knowledge that serious injury is a *probable* (as distinguished from a possible) result"; and second, "the intentional doing of an act with a wanton and reckless disregard of its *possible* result." (*Cope* v. *Davison*, 30 Cal.2d 193, 198-199 [180 P.2d 873, 171 A.L.R. 667].)

■ A jury may properly find that the injuries to a guest resulted from both the intoxication and wilful misconduct of the driver and such verdicts are not necessarily inconsistent. (*Pennix* v. *Winton*, 61 Cal.App.2d 761, 766 [143 P.2d 940, 145 P.2d 561]; *Johnson* v. *Marquis*, 93 Cal.App.2d 341, 350

[209 P.2d 63].) ██ The evidence supports a reasonable inference that Harris failed to apply his brakes or take appropriate action to avoid the collision, knowing that serious injury to his guest was a probable as well as a possible result.

As was said in *Parsons* v. *Fuller,* 8 Cal.2d 463, 468 [66 P.2d 430]:

" 'To us it seems clear that one who, while driving an automobile, knowingly flirts with danger and, without necessity or emergency compelling him, "takes a chance" on killing or injuring himself and others, who may be so unfortunate as to be riding with him, is guilty of wilful misconduct.' "

██ Evidence of excessive speed of the Harris automobile, standing alone, does not constitute wilful misconduct under section 403 of the Vehicle Code, but as was said in *Johnson* v. *Marquis,* 93 Cal.App.2d 341, 351-352 [209 P.2d 63]:

". . . evidence of excessive speed under circumstances which infer wilful, wanton or reckless disregard for the safety of guests may constitute wilful misconduct which will support a judgment upon that issue."

Under the circumstances here shown a finding of wilful misconduct is supported by substantial evidence.

██ The question of whether the wilful misconduct of Harris or his intoxication (which is admitted) was a proximate cause of plaintiff's injuries was one of fact for the jury, under the circumstances shown by the record, and its determination is binding upon us. (*Fennessey* v. *Pacific Gas & Elec. Co.,* 20 Cal.2d 141, 145 [124 P.2d 51]; *Bunch* v. *Eason,* 95 Cal.App.2d 845, 848 [214 P.2d 28].)

██ Appellant argues that the court erred in refusing to give the following instruction:

"The rule of law just announced is not to be confused with the law of contributory negligence. Although a guest may not voluntarily assume the hazard of an intoxicated driver, she may commit some negligent act of her own or be guilty of some negligent omission, which contributes as a proximate cause to the injury. Such conduct, if in fact indulged in, also bars her from recovery from her host."

The contention is that this instruction should have been given in connection with appellant's defense to a liability based upon intoxication. However, in this connection, the court gave the following instruction:

"When upon entering a vehicle to accept a ride as a guest, one knows, or by exercising ordinary care for her own con-

cerns would know, that the one who is to operate the vehicle is intoxicated, the law holds that she assumes the hazard of her undertaking and, therefore, may not recover in the event of injury resulting from the driver's intoxication. The same effect under the law also follows when, after having entered a vehicle, a guest learns, or by exercising ordinary care would learn, that the driver is intoxicated, and the guest having a reasonable opportunity to alight, at a reasonably safe place, fails to do so, thus voluntarily accepts the risks incident to the driver's intoxication."

The jury was told in several other instructions that plaintiff would be barred from recovery if she committed "some negligent act of her own," or was guilty of "some negligent omission" which contributed "as a proximate cause to the injury." The jury was also instructed as to plaintiff's liability for contributory negligence and as to the definitions of negligence and contributory negligence. Upon reading all of the instructions and considering them together, we fail to find prejudicial error in the refusal of the offered instruction.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.