253 P.2d 240

MASON et al. v. MOOTZ.

No. 7900.

Supreme Court of Idaho.

Feb. 3, 1953.

Hawley & Marcus, Boise, Norris & Norris, Payette, for appellant.

Donart & Donart, Weiser, Welker & Daniel, Payette, Harold Henigson, Nyssa, Or., for respondents.

TAYLOR, Justice.

The plaintiffs (respondents) are the widow and minor daughter of Clarence Mason, deceased. On the evening of March 21, 1951, the deceased and another, as guests, were riding in an automobile owned and driven by the defendant (appellant.) The three were proceeding from Nyssa, Oregon, to the Gay Way, on U. S. Highway 95, in Idaho, when an accident occurred in which Clarence Mason suffered fatal injuries.

The testimony is comparatively brief and can be conveniently summarized. The witness Leonard Platz operated a farm near the scene of the accident. Having been advised that four horses had escaped from the farm, he proceeded on foot along the highway in the direction of Nyssa to bring them back. There is a dip in the road where the accident occurred. He had proceeded past that, up and over the top of the hill beyond, where he caught one of the horses. The others "took off for home." He then proceeded back toward his farm, leading the one horse along on the shoulder of the right-hand side of the highway. He had just gone over the top and started down the incline when he observed the defendant's car coming from the direction of Nyssa. It was around 8:00 o'clock and "getting pretty dark." As the car neared him he waved his hand up

and down. This motion was demonstrated to the jury by the witness, but whether or not it included the arm, the record does not show. For the purpose of this decision we assume that the motion was made with the arm and hand extended. Whether the driver observed this signal does not appear. The witness said that he had driven a car for about twenty-five years, but was unable to say how fast defendant's car was travelling at that time. "Well, I imagine it was going a medium speed * * I would say it was going at a medium speed." He next heard the brakes "squeak" and then the crash; he did not notice that the speed was decreased as the car passed him, and he did not notice that the brakes were released or the speed increased after they were applied; that as far as he knew the brakes were continually applied to the time of the crash.

Deputy Sheriff, Ray Decker, testified that the oiled part of the highway at the scene was twenty to twenty-five feet wide with three-foot shoulders on each side, level with the pavement, but sloping somewhat therefrom; that at the bottom of the slope where the car left the highway there was a drop-off of seven feet, where the grade crossed the hollow on a fill; that it was 300 yards from there to the top of the hill. In one part of his testimony he referred to the slope as "fairly gentle," and at another place as "quite a dip too," and at still another, "quite a grade going down into the bottom of the draw and pulling out on the other side." It was a dark night, there was no moon. He took some measurements and found skid marks beginning on the left side near the center line at a point 180 feet up the grade from the point where the car left the road, and extending across the center line down the left-hand side of the oiled surface, and across the shoulder where it went over the embankment; that he observed no other skid marks on the highway; that the car lay between the grade and the fence on its top and facing in the direction from which it had come. The earth was dug up at the point where it struck after leaving the grade, and appeared as though something had been "drug," where the car lay with no other marks in between; that the car came to rest 120 feet from where it left the highway; that the skid marks were continuous from the point where the brakes were first applied to the point where they went over the bank.

Lienkaemper, mortician, took Mason to the hospital in Nyssa, a distance of four miles; that he was unconscious when picked up and did not regain consciousness before reaching the hospital.

A nurses' aid, Marjorie Standerfer, testified that a short time after he was brought into the hospital, Mason became conscious, or partly so, and said, "Goddamit, watch where you are going and don't drive so fast."

Leo Montague, a witness for the defendant, testified that he, driving his car, and

accompanied by Jim Bale, came upon the scene of the accident from the direction of Nyssa very soon after the occurrence and while there still was dust in the air; that before they came over the hill they observed the lights of the car shining up into the sky; that after they came over the hill they came upon three black horses in the highway in their right-hand lane; that he slammed on his brakes, slid the tires a ways, then when he saw there was clearance to the left he proceeded around the horses and stopped at the scene of the wreck; that the horses were about 100 yards upgrade, and that it was about 200 yards to the top of the hill, from the wreck.

Bale testified that it was dark and about 8:10 p. m.; that they started slowing when they saw the lights and after coming over the top of the hill and observing the horses, the brakes were applied, and they then went around them to the left; that there were three horses, they were black, and in the right-hand lane.

These defense witnesses also testified as to the position of the defendant's car and its occupants.

■■ The first question for determination is the admissibility of the declaration of the decedent made at the hospital as testified by the nurses' aid. It was admitted, over objection, as a part of the res gestae.

The record is indefinite as to the elapsed time between the accident and the statement attributed to the deceased. However, it does appear that he was picked up within a short time after the occurrence, taken by ambulance a distance of four or five miles to the hospital, and that the statement was made shortly after his arrival there. Although time is an important element, it is not necessarily controlling as to what is admissible under the rule. Erickson v. E. Rutledge Timber Co., 33 Idaho 179, 191 P. 212. More important is the spontaneous character of the utterance and circumstances from which it can be said that it arises out of and is in a sense a part of, the main event, and that it is made when the mind is chiefly controlled or influenced by the event and not in a calm, deliberative mood. In this case the utterance was entirely spontaneous and not made in response to interrogation. The deceased's mind, due to the intervening unconsciousness, was still apparently laboring under the emotional stress of the accident, and as though he were still in the throes of the occurrence. Continuing unconsciousness from the time of the main event to the time of the statement, in a sense, bridges the lapse of time and brings the declarant back to the time and place of the occurrence. Hines v. Foster, 166 Wash. 165, 6 P.2d 597; Chicago, R. I. & P. Ry. Co. v. Owens, 78 Okl. 50, 186 P. 1092; MacDonald v. Riverside & Fort Lee Ferry Co., 23 A.2d 405, 20 N.J.Misc. 19; 32 C. J.S., Evidence, § 419, p. 52. Cf. Wilson v. St. Joe Boom Co., 34 Idaho 253, 200 P. 884; State v. Chacon, 36 Idaho 148, 209

P. 889; State v. Breyer, 40 Idaho 324, 232 P. 560; Jensen v. Wheeler & England, 51 Idaho 91, 1 P.2d 624. These authorities also held that the trial judge is vested with a considerable discretion in determining the admissibility of such evidence. We think the ruling was correct.

■ Appellant further urges that the statement of the deceased is meaningless. It may well be urged that it was induced by a sense of speed and danger arising in the mind of the deceased after the emergency had occurred, rather than from a feeling of excess speed or a sense of danger induced in his mind before the emergency. In any event its construction and weight was for the jury.

■ The controlling question in this case is the sufficiency of the evidence to support the verdict and judgment. Our guest statute is as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of the said owner or operator or caused by his intoxication or his reckless disregard of the rights of others." § 49-1001, I.C.

It is not urged here that the accident was intentional on the part of appellant, or that it was caused by his intoxication. Recovery is sought on the ground that the accident was caused by his "reckless disregard of the rights of others."

"The term 'reckless disregard' as used in said section means an act or conduct destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong rash; wanton disregard, or conscious indifference to consequences." Foberg v. Harrison, 71 Idaho 11, at page 16, 225 P.2d 69, 71.

■ In a guest case the burden is on the plaintiff to prove that the accident was caused by conduct on the part of the defendant amounting to reckless disregard as so defined. Proof of ordinary negligence will not suffice. Manion v. Waybright, 59 Idaho 643, 86 P.2d 181; Hughes v. Hudelson, 67 Idaho 10, 169 P.2d 712; Dawson v. Salt Lake Hardware Co., 64 Idaho 666, 136 P.2d 733; Rauch v. Stecklein, 142 Or. 286, 20 P.2d 387; Gifford v. Dice, 269 Mich. 293, 257 N.W. 830, 96 A. L.R. 1477, annotation 1479; Harvey v. Clark, 232 Iowa 729, 6 N.W.2d 144, 143 A. L.R. 1141; Vanderkruik v. Mitchell, 118 Conn. 625, 173 A. 900; Conant v. Collins, 90 N.H. 434, 10 A.2d 237, 136 A.L.R. 1266; 4 Blashfield, Cyclopedia of Auto. Law & P., p. 353, § 2771.

■ There is no testimony as to the speed at which appellant was driving prior to the accident, except that of Platz, who

described it as "medium speed." This would tend to establish that, as far as speed is concerned, there was an absence of ordinary negligence. The evidence as to the skid marks, their length, the distance travelled after going over the bank, and the gouge in the earth in the right-of-way where it struck and inferentially bounced to the place where it came to rest, is, of course, evidence of considerable speed. Although the testimony of the defense witnesses would suggest that perhaps a part of the skid marks observed by the deputy sheriff may have been made by the Montague car. In any event, there is nothing in the record to indicate that this car, travelling at "medium" or moderate speed, operated over the course and in the manner it was operated, would not make the same marks over the same distance and otherwise behave as it did. Taken together with the testimony of Platz, who was close to, and saw the car when it was in motion, the whole evidence would be sufficient to go to the jury if the issue had been ordinary negligence. But, we think it is wholly insufficient to support the claim of reckless disregard under the guest statute. Manion v. Waybright, 59 Idaho 643, 86 P. 2d 181; Dawson v. Salt Lake Hardware Co., 64 Idaho 666, 136 P.2d 733; Hughes v. Hudelson, 67 Idaho 10, 169 P.2d 712; Aduddell v. Brighton, 141 Kan. 617, 42 P. 2d 555; Gieselman v. Uhlman, 7 Cal.App. 2d 409, 45 P.2d 819; Anderson v. Anderson, 142 Kan. 463, 50 P.2d 995; McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909; Rawlins v. Lory, 44 Cal.App.2d 20, 111 P. 2d 973; Van Fleet v. Heyler, 51 Cal.App. 2d 719, 125 P.2d 586; Allen v. Robinson, 85 Cal.App.2d 617, 193 P.2d 498; Mason v. Banta, 166 Kan. 445, 201 P.2d 654; Johnson v. Marquis, 93 Cal.App.2d 341, 209 P. 2d 63; Shoemaker v. Floor, Utah, 217 P.2d 382; Anderson v. Newkirch, 101 Cal.App. 2d 171, 225 P.2d 247; Jones v. Harris, 104 Cal.App.2d 347, 231 P.2d 561; Hart v. Hinkley, 215 Iowa 915, 247 N.W. 258; Newville v. Weller, 217 Iowa 1144, 251 N. W. 21; Balcer v. Pere Marquette Ry. Co., 266 Mich. 538, 254 N.W. 198; Rogers v. Merritt, 307 Mich. 459, 12 N.W.2d 422; Anderson v. Colucci, 116 Conn. 67, 163 A. 610; Annotation 96 A.L.R. 1479; Annotation 136 A.L.R. 1270. We are aware that some of these cases construe a statute using the term "willful misconduct" and that such term is to be distinguished from the wording of our statute. Dawson v. Salt Lake Hardware Co., supra. However, the reasoning is applicable here.

Moreover, there is no evidence that the driver was familiar with the road or that he was aware of the presence of the dip or depression where the horses were. But, assuming that, under the circumstances, he was required to anticipate such a dip and the presence of livestock or other possible obstructions, his failure to do so, without more, would indicate only ordinary negli-

gence. It must be remembered that reckless disregard, within the meaning of the guest statute, requires proof of an absence of heed or concern for consequences, a heedlessness of danger, a "wanton disregard, or conscious indifference to consequences." This implies a consciousness of danger and a willingness to assume the risk, or an indifference to consequences. There is nothing to indicate that appellant was driving in such manner as to infer an awareness of danger, or an indifference to consequences. In their complaint, the plaintiffs allege that after applying his brakes when he first saw the horses, he released the brakes, speeded up his car, undertook to outrun the horses, and pass around them to the left, and that in so doing he was reckless. However, there is no proof of this allegation. In fact, the only proof on that point is that the brakes were continuously applied and that the car did not resume or increase its speed. The apparent effort to stop the car and to avoid the horses by driving to the left of them cannot be considered as any proof of recklessness. In this respect this case is distinguishable from Hughes v. Hudelson, supra.

Considering the requirements of the guest statute, the verdict is not supported by substantial evidence, is against the clear weight of the evidence, and hence should be set aside. Bane v. Gwinn, 7 Idaho 439, 63 P. 634; Idaho Mercantile v. Kalanquin, 8 Idaho 101, 66 P. 933; Simmons v. Trowbridge, 69 Idaho 79, 202 P.2d 1085.

In view of this conclusion it is unnecessary to consider other assignments. The judgment is reversed with directions to dismiss the action.

Costs to appellant.

PORTER, C. J., and KEETON, J., concur.

GIVENS, Justice (dissenting).

I concur in the opinion, except as to the reversal. The undisputed evidence there were skid marks for 180 feet before the lethal car left the dry highway and then traveled 120 feet and came to rest upside down, together with plaintiff's utterance at the hospital, were sufficient to present a jury question; namely, whether the defendant was driving with "reckless disregard" as properly defined in the instructions—the criterion of our guest statute.

The judgment should be affirmed.

THOMAS, J., concurs in this dissent.