[No. 36401.   Department Two.   August 8, 1963.]

HAROLD D. GRISWOLD, as *Administrator, Respondent*, v. DONALD RAMSEY *et al., Appellants.*\*

*John D. MacGillivray* and *Paul F. Schiffner*, for appellants.

*Cashatt, Williams, Connelly & Rekofke*, for respondent.

HAMILTON, J.—This is a wrongful death action brought by Harold D. Griswold (plaintiff-respondent), as administrator of the estate of Mary Ellen Griswold, on his own behalf as surviving spouse and on behalf of his minor daughter, against Donald and Elena Ramsey, and Edith Ramsey, their daughter (defendants-appellants).

\*Reported in 384 P. (2d) 635.

From a jury verdict favorable to plaintiff, defendants appeal. The sole question presented by this appeal is the sufficiency of the evidence to warrant submission of the case to the jury or to support the jury's verdict under the host-guest statute of the state of Idaho.

In reviewing the evidence, we do so under the familiar rule of law that such must be considered in the light most favorable to the plaintiff. *Handler v. Osman*, 60 Wn. (2d) 800, 376 P. (2d) 439.[1]

The automobile accident giving rise to this cause of action occurred about 1 p.m. on September 5, 1960, upon that portion of U. S. Highway No. 95, known as the "Lewiston Grade," in the state of Idaho. Plaintiff's decedent, Mary Ellen Griswold, was riding as a guest passenger in the defendants' Volkswagen. It was being driven by defendant Edith Ramsey and was proceeding in a southerly direction down the Lewiston Grade toward Lewiston. The roadway, at the point of impact, was blacktopped, consisting of two 12-foot traffic lanes divided by a broken center line, with a wide shoulder on each side. The road was bare and dry and the weather was clear.

From the approximate crest of the Lewiston Grade, the evidence indicates, the highway runs straight and slightly down grade for about 1,500 feet, at which point it curves to the right. Notice of the curve and a speed limit thereon of 50 miles an hour is given by a traffic sign 400 feet from the turn. Oncoming or northbound traffic is obscured to some extent by a dirt bank. The curve is described by plaintiff's witnesses as having a very slight super, but easy to negotiate if an automobile is driven within the posted speed of 50 miles an hour.

As the Volkswagen approached and entered the curve, it started skidding. The skid culminated in a collision with an oncoming 1951 Ford vehicle being driven at approximately 35 to 40 miles an hour. The physical evidence indicated the length of the skid to be approximately 173 feet.

[1] Although this action is governed by the substantive law of another jurisdiction, the *lex fori* governs the conduct of proceedings. Restatement, Conflict of Laws § 592.

Mrs. Vohrdal, the driver of the Ford vehicle, described the action and speed of the Volkswagen as follows:

"A. Well, the first time I saw the car, or the Volkswagen, it was shooting across the road onto my side or my lane of traffic and it looked as if it was going to go on straight and it was on my side and it still was on my side of the traffic and it turned and came down broadside, or almost broadside I would say. It was a slight angle, like that (indicating), and it was actually jumping, and just before it got to our car the back end started to straighten out and then it spun around and hit our car. . . . A. Then the Volkswagen turned, which it would be facing about like this, on my side of the highway and it actually jumped. At the very last the back end of the car started going this way (indicating) and then back and the left rear hit the front left of our car. . . . Q. . . . Do you have any idea, Mrs. Vohrdal, the speed of that Volkswagen, when you first saw it? A. Well, it actually looked like it shot out of a cannon, one minute it wasn't there and the next minute it was. As far as miles, she was going anywhere between 50 and 90, I couldn't tell what rate of speed, she was traveling terrifically fast."

The impact was described by a witness, Marvin Gorset, as follows:

"A. When it collided, the Volkswagen just seemed to go in a snake or an 'S'. It snaked back and forth, started turning back and forth this way and this way and landed up over in the ditch. It seemed about the first curve the door flew open and the driver came flying out through the air towards my car and she lit about—I am not too good a judge of feet, but she lit, I imagine maybe 200 or 250 feet in front of my car, where she laid at the time I stopped. . . . A. . . . When these two cars collided they hit with such a force, just like somebody had thrown a bomb in the Volkswagen, the way things looked. Q. Did any parts fly off of that Volkswagen? A. Yes, one thing was the battery. Q. How far did that go? A. Well, ten or fifteen or twenty feet."

And, by witness Ruby Gorset, as follows:

"A. Well, the little car, the window panes flew out of it and the door flew open and this girl came out and seemed to go catapulting through the air and landed out in front of our car. . . ."

Both the Volkswagen, driven by Edith Ramsey, and the Ford, driven by Mrs. Vohrdal, were damaged beyond practical repair. Photographs of the two vehicles, showing the extent of damage, were introduced in evidence. Mrs. Vohrdal was injured. Mary Ellen Griswold was killed when she was thrown from the Volkswagen. Edith Ramsey was thrown some 90 feet from the point of impact, sustaining serious injuries.

Miss Ramsey testified to having driven at a safe speed prior to arrival at the Lewiston Grade and to a loss of memory relating to events immediately preceding and surrounding the collision. In this latter respect, however, her testimony was to some extent impeached by her pre-trial deposition and one of plaintiff's witnesses testified that at the scene of the accident she admitted fault. Defendants' evidence was otherwise directed to showing that the curve was deceptively dangerous, and that it could not safely be negotiated at the posted speed of 50 miles an hour. In this respect, one of defendants' witnesses testified he experienced some difficulty in negotiating the curve at speeds of 45 to 50 miles an hour in a ton and a half truck and at speeds of 50 to 60 miles an hour in a quarter ton pickup truck.

■ The accident having occurred in the state of Idaho, the host-guest statute of Idaho governs as to defendants' liability. *Maag v. Voykovich*, 46 Wn. (2d) 302, 280 P. (2d) 680; *Wood v. Taylor*, 8 Utah (2d) 210, 332 P. (2d) 215.

The host-guest statute of Idaho (Idaho Code § 49-1401) provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of the said owner or operator or caused by his intoxication or his reckless disregard of the rights of others."

Neither intentional injury nor intoxication of defendant driver is alleged. Plaintiff's claim is predicated upon an alleged reckless disregard of the rights of others, consisting essentially of asserted excessive speed and lack of control of the Volkswagen at the curve.

In *Foberg v. Harrison,* 71 Idaho 11, 16, 225 P. (2d) 69, the Idaho Supreme Court defined the term "reckless disregard," as used in its host-guest statute, as:

" . . . an act or conduct destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong rash; wanton disregard, or conscious indifference to consequences."

This definition has been adhered to in *Mason v. Mootz,* 73 Idaho 461, 253 P. (2d) 240; *Riggs v. Roberts,* 74 Idaho 473, 264 P. (2d) 698; *Loomis v. Church,* 76 Idaho 87, 277 P. (2d) 561; *Turner v. Purdum,* 77 Idaho 130, 289 P. (2d) 608; *Wilson v. Bacon,* 78 Idaho 389, 304 P. (2d) 908; *Grant v. Clarke,* 78 Idaho 412, 305 P. (2d) 752; *Hunter v. Horton,* 80 Idaho 475, 333 P. (2d) 459; and *Smith v. Sharp,* 85 Idaho 17, 375 P. (2d) 184.

In *Mason v. Mootz, supra,* the Idaho court further amplified the definition, stating (p. 468):

" . . . It must be remembered that reckless disregard, within the meaning of the guest statute, requires proof of an absence of heed or concern for consequences, a heedlessness of danger, a 'wanton disregard, or conscious indifference to consequences.' This implies a consciousness of danger and a willingness to assume the risk, or an indifference to consequences. . . ."

In *Wilson v. Bacon, supra,* the Idaho court quoted with approval the following statement from 2 Restatement of the Law, Torts § 500g (p. 392):

" 'Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency in that reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk sub-

stantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.' 2 Restatement of the Law, Torts, § 500g."

And, in *Smith v. Sharp, supra,* the court quoted with approval 2 Restatement of the Law, Torts § 500:

" 'The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' "

From the foregoing quotations, it is clear that to justify submission of a contention of reckless disregard to the jury, under the Idaho host-guest statute, it is necessary that the evidence, when viewed in the required favorable light, demonstrates, directly or circumstantially, (1) extraordinary and dangerous conduct on the part of the host-driver; (2) serious or unreasonable risk of harm flowing from such conduct; (3) conscious awareness, on the part of the host-driver, of such risk, or knowledge of facts which would lead a reasonable person to realize and appreciate the risk; and (4) a manifest willingness, on the part of the host-driver, to assume the risk, or a patent indifference to consequences.

It is defendants' contention that plaintiff's proof fails to demonstrate reckless disregard, and, at best, establishes no more than ordinary negligence upon the part of defendant driver. We must disagree with defendants.

The testimony of the witnesses above quoted and referred to, together with the physical facts and surroundings as revealed by the evidence, including the posted curve and speed sign, the skid marks, the force of impact, the vehicular damage, the bodily injuries, and the type of vehicle involved, must be viewed in the light most favorable to plaintiff's contention. When so viewed, we are satisfied the evi-

dence presents a prima facie showing of (a) dangerously excessive speed and corresponding lack of vehicular control; (b) unreasonable risk of injury arising from the type of vehicle and highway curve involved; (c) notice of the curve and knowledge of the designated safe speed; and (d) a conscious willingness on the part of the defendant driver to assume the risk of accident in negotiating a partially obstructed curve at an excessive speed.

The trial court did not err in submitting the issue of reckless disregard to the jury nor in denying defendants' motion for judgment notwithstanding the verdict.

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.