375 P.2d 184

**Don C. SMITH and Alice V. Smith, husband and wife, Plaintiffs-Respondents,**

**v.**

**Merrill Kim SHARP, Merrill J. Sharp and Merrill Kim Sharp by Merrill J. Sharp, Guardian ad litem, Defendants-Appellants,**

**and**

**City of Pocatello, a municipal corporation, Defendant-Respondent.**

**No. 9094.**

Supreme Court of Idaho.

Oct. 12, 1962.

Merrill & Merrill and Gee & Hargraves, Pocatello, for appellants.

**20**

Milton E. Zener and Gerald Olson, Pocatello, for respondent City of Pocatello.

Louis F. Racine, Jr., Robert C. Huntley, Jr., and Mark B. Clark, Pocatello, for respondents Smith.

McQUADE, Justice.

This appeal is taken from a judgment in favor of respondents for the death of their daughter, Marilee Smith. She was drowned when the car in which she was a guest was driven through a barrier at the terminus of a dead-end street and then into the Portneuf river within the city of Pocatello, Idaho, at about 9:40 p. m., February 10, 1958.

Appellant Merrill Kim Sharp (referred to herein as Kim Sharp), driver of the automobile, was transporting a group of young people to their various homes after a church meeting. One of the passengers, Gay Mizera, lived in an area with which appellant Kim Sharp was unfamiliar. The Sharp automobile was a 1951 Oldsmobile 2-door sedan, equipped with twin tail pipes and Hollywood deeptone mufflers. With Kim Sharp in the front seat were Lynn Evenson and Lamona Webster. Seated in the rear were Gwenna Woodward, Marilee Smith, Gay Mizera, Verda Stone and Bill Clark.

Kim Sharp, proceeding west on West Halliday street in Pocatello, crossed a bridge over the Portneuf river to South Hayes at which intersection he turned left in a southerly direction on South Hayes. Halliday street extends east and west and South Hayes north and south. All portions of these streets are paved except that portion of South Hayes to the north of the intersection, which traverses a distance of approximately 173 feet to a barrier. At this point the river bisects South Hayes. South Hayes continues on the opposite side of the river in a northerly direction. The distance from the barrier to the river edge is 12 feet. Halliday street is paralleled by two drainage depressions at the intersection. The drainage depression on the southerly side of Halliday is $\frac{1}{10}$th of a foot lower than the elevation of the center of the intersec-

tion. The drainage depression on the northerly side of Halliday street is $1\frac{3}{10}$ths feet lower than the center of the street and 1 foot lower than the dead-end portion of South Hayes to the north of the intersection. The paved streets are approximately 40 feet in width and the unpaved portion about 39 feet in width.

After turning to the left and southerly from Halliday onto South Hayes, the vehicle approached a small girl, Darla Palmer, who was walking in the roadway about a block away from where South Hayes intersects Carter street. Lights of the vehicle illuminated Darla Palmer. She related she became frightened by the vehicle's erratic approach and ran to the side of the road behind a truck. As defendant Kim Sharp passed she heard a vulgar, caustic remark, directed at her and which frightened her, from one of the occupants. Kim Sharp continued driving the automobile southerly to the next intersection turning left onto Idaho street and then turning left down an alley to Carter street to the home of Gay Mizera. He drove off the street between some trees in the yard of the Mizera home and let Gay out on the porch steps. After letting her out he drove back to the street westerly on Carter toward South Hayes.

In the meantime Darla Palmer had hastened home in fright and related the experience to her mother. She advised Mrs. Palmer that the car making the loud noise in the alley was the one which had

caused her fright. They hurried to the family car for the purpose of pursuing the offending car to identify it by the license number thereon. Mrs. Palmer drove to the intersection of Carter and South Hayes at which point she observed Kim Sharp's car parked at the Mizera home. Parking sideways, Mrs. Palmer illuminated the car's lights brightly to read Sharp's license number. Sharp drove his vehicle to the point where Mrs. Palmer was partially obstructing the street, at which time Mrs. Palmer did read the license number. Marilee Smith in the Sharp car recognized Darla and Mrs. Palmer and so advised the other occupants. According to Mrs. Palmer, Sharp at this time placed his car in such rapid motion as to cause the tires to throw gravel, turned his automobile to the right in a northerly direction on South Hayes picking up speed as it progressed. Mrs. Palmer further testified that Sharp's car as it was moving northerly on South Hayes pulled to the wrong side of the road before reaching the Hayes-Halliday intersection, and its lights went out as though going to park, but it did not stop. She next saw it, apparently illuminated by the Halliday intersection street lights, as it hit the drainage depressions, bounced twice and disappeared into the darkness of the dead-end portion of South Hayes street.

Also, observing the motor vehicle was Mrs. Jennie Brown, who lives on the northwest corner of the Hayes-Halliday intersection. While observing the Northern Lights from her front porch Mrs. Brown heard a loud noise which sounded like an automobile muffler. She looked southerly on South Hayes toward Carter, saw Kim Sharp's car approaching at a speed faster than normal town driving, without the headlights illuminated. She observed the car for about 200 feet, heard it hitting the drainage depressions. Thereafter her view was obstructed by a tree. She turned to go into her home when she heard a crash.

Kim Sharp stated that his left knee struck the light switch shoving it forward and extinguishing the head lamps. This was caused by the occupants in the rear seat, who shifted forward when the automobile struck the first depression, pushing the folding portion of the front seat, and Sharp, forward. He related that the car was proceeding at a speed of about 20 miles per hour at the intersection of South Hayes and Halliday and that the speed of the automobile was being reduced by engine compression without the application of the brakes as it proceeded along the roadway. Someone in the back seat had yelled "Look out!" or something to that effect just prior to the time the auto struck the first depression. Kim Sharp testified that the depression did not cause him to lose control of the car, and that his brakes were in good operating condition. The distance from the last depression to the barrier was 173 feet. Sharp knew his headlights were off and saw

headlights and parked cars along the street in the distance and the street light in the center of the next intersection which was across and beyond the open river.

Sharp testified he believed the street continued without interruption. Although he had not been in the vicinity previously he did know that the Portneuf river flowed through the area.

The barrier protecting traffic from the river consisted of 11 aluminum painted steel posts, 6 inches in diameter and imbedded 3 to 4 feet in the ground. Sharp failed to observe brush and trees on the opposite bank of the river.

Proceeding toward him on the opposite side of the river was another motor vehicle driven by Wayne Davis which was traveling southerly on South Hayes with its headlights on. As Davis approached the dead-end portion of South Hayes from the north, he observed a set of headlights coming toward him. He noticed these lights were south from the Halliday street intersection and did not know when they were extinguished, but presumed that the automobile had turned onto Halliday street. As he proceeded toward the river from the north, he prepared to make a U-turn. While turning he observed the red glare of brake lights as the Sharp vehicle proceeded toward him from the opposite side of the river. In describing the car going into the river, Davis related that as the car went over the river bank it made a twisting motion with the rear of the car going up and over through the air and the car fell onto its top in the water. He observed that both tail lights were on while the rear of the car was in the air. The car rested momentarily on the water before it sank.

Sharp testified that he applied the brakes on the car just before going into the river when he noticed some weeds along the side of the road. Kim Sharp and Lynn Evenson escaped through an open window of the car and although Sharp, Evenson and Davis attempted to assist the other occupants from the car, they were unsuccessful.

At the conclusion of plaintiffs' evidence, the defendants made a motion for a directed verdict which was denied. At the conclusion of defendants' case the motion for directed verdict was again presented and denied by the court. Thereafter the case was submitted to the jury and verdict rendered in favor of plaintiffs and against the defendants Sharp. The jury found in favor of the City of Pocatello, and against the plaintiffs.

 This appeal is from the judgment on the verdict, and the orders denying a motion for new trial and motion for judgment notwithstanding the verdict. These motions made by the defendants Sharp were not directed at the City of Pocatello, hence as to this defendant we are concerned solely with the appeal from the

judgment. No error was assigned in relation to liability on part of the city; the only question presented was sufficiency and propriety of instructions. Appellants argue that if the case is reversed on appeal because of erroneous instructions the defendant city would adversely be affected. The jury was instructed:

"No. 3.

"This action involves negligence, but it is negligence of a different degree, or kind, with respect to the allegations against the defendants Merrill Kim Sharp and Merrill J. Sharp from that charged against the City of Pocatello.

"For your information, ordinary negligence may be defined to be the omission or want of ordinary care, and ordinary care is such care as an ordinarily prudent person would exercise under like circumstances. Negligence may consist of the failure to do that which an ordinarily prudent person would do under the circumstances, or the doing of that which an ordinarily prudent person would not do under the circumstances. The care to be exercised to be ordinary care must be proportioned to the danger reasonably to be apprehended under the circumstances. What might be ordinary care under certain circumstances would be negligence under other circumstances.

"The standard by which ordinary care is gauged is the question:

"'What would an ordinarily prudent person have done under like circumstances?'

"If a person acted as an ordinarily prudent person would act under the same circumstances and conditions there is no negligence. If a person failed to act as an ordinarily prudent person would have acted under the same or like circumstances and conditions, then there is negligence."

"No. 12.

"It is the duty of a municipality to erect and maintain barriers or warning devices wherever necessary to make the street reasonably safe for travelers using ordinary care and at such places as would be unsafe for usual and ordinary travel without such barriers or warning devices.

"A failure in this duty by the City of Pocatello may be considered by you as negligence on its part.

"The City of Pocatello is not an insurer of the safety of travelers on its streets, and it had no duty to erect barriers sufficient to withstand the impact of an automobile out of control, or recklessly driven, and if you find from the evidence that South Hayes Avenue at the place of this accident

was in a reasonably safe condition for travelers in the usual mode and exercising ordinary care, no verdict may be returned against the City of Pocatello.

"There is no evidence in this case on which you would be justified in finding the City guilty of maintaining a nuisance by reason of the condition of South Hayes Avenue where it is intersected by the Portneuf River on February 10, 1958."

"No. 15.

"You are instructed that if you find that the proximate cause of the accident was the negligence of the City of Pocatello, and that the acts of Merrill Kim Sharp amounted to only ordinary negligence, and not reckless disregard of the rights of others, as that has been defined for you, then you cannot find against Merrill Kim Sharp and Merrill J. Sharp, regardless of how you find against the City."

"No. 17.

"You are instructed that it is no defense to any one of the several defendants that the injury would not have resulted from his negligence alone, without the concurrent negligence or wrongful act of the other defendants. Where the original negligence continues and exists up to the time of the injury, the concurrent negligent act of a third person causing the injury will not be regarded as an independent act of negligence, but the two concurring acts of negligence will be held to be the proximate cause of the injury."

"No. 18.

"You are instructed that several different disassociated defendants may, by their negligent conduct, cause a loss and a basis for damages. If you find, therefore, that the defendant, City of Pocatello, in maintaining said roadway in a negligent manner or in failing to provide ordinary safeguards, acted in a negligent manner and that its negligence contributed proximately to the death of Marilee Smith, then you may also find in favor of the plaintiffs and against the defendant City of Pocatello.

"In order for the plaintiffs to recover against more than one defendant not acting in concert; that is, where their actions are not connected, it is not necessary that either of the defendant's negligence be the sole cause of the accident in order for them to be liable. Under the law, it is necessary only that their negligence, or the negligence of either of them, be a contributing cause to the ultimate result and that the contributing cause also be a proximate cause as that term is defined for you in other instructions."

These instructions when considered together correctly advised the jury concerning the law insofar as the City of Pocatello may have had liability. The case of Smith v. Sharp which was before the Court in 82 Idaho 420, 354 P.2d 172, discussed liability of a municipality in keeping with facts which were alleged therein. There was no evidence establishing a causal connection between Marilee Smith's death and the City of Pocatello. Having been properly submitted to the jury, the verdict in favor of the City will not be disturbed here on appeal.

Appellants' first assignments of error are founded on the contention that the trial court erred in refusing their motion, at the close of plaintiffs' case, for a directed verdict on the ground that the evidence was insufficient to prove a claim for relief against these defendants. It is to be noted that defendants introduced evidence after their motion for directed verdicts had been denied.

Rule 50(a) I.R.C.P. provides:

"Motion for a directed verdict—When made—Effect.—A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. * * *"

Idaho Rule 50(a) is identical with Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. (Rule 50(a) of the Federal Rules of Civil Procedure is interpreted by 2B Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Civil, § 1074, p. 370, as:

"Rule 50(a) makes two significant changes in the prior practice:

"(1) If a motion for a directed verdict made by a party at the close of his opponent's evidence is not granted, the moving party may offer evidence to the same extent as if the motion had not been made, without having reserved the right to do so.

"(2) A motion for a directed verdict which is not granted is not a waiver of the right to have issues of fact submitted to the jury, even though all parties have moved for directed verdicts."

Said § 1074, p. 372, further provides:

"Technically a party waives his right to a directed verdict, if the motion is made at the close of his opponent's case, and thereafter he introduces evidence in his own behalf. However he may renew the motion at the close of all

the evidence. If he fails so to renew the motion, he may not claim error on appeal because of denial of his motion. *The renewed motion will be judged in the light of the case as it stands at that time, and even though the court may have erred in denying the initial motion, this error is cured if subsequent testimony on behalf of the moving party repairs the defects of his opponent's case.*" (emphasis supplied.)

In accordance with the above view, we interpret Rule 50(a) as having for its prime purpose the preservation of the right of the moving party to present evidence in the event his motion for a directed verdict is denied. The rule preserves such right to the moving party even though that party has not specifically reserved the right to do so. Should the moving party present evidence after the denial of his motion for a directed verdict, his right to assign error grounded on the denial of his motion is waived unless the motion is renewed at the close of all evidence. If the motion is renewed and denied by the trial court, the moving party may claim such ruling as error on appeal. In such a case, the appellate court will review the evidence as it stands at the close of the trial.

Appellants seek to assign as error the denial of their motions for directed verdicts at the close of plaintiffs' case. When this motion was denied, they presented evidence on their behalf. When the appellants presented evidence after the denial of their motion, they waived their right to claim error on appeal from the denial of their motion. Accordingly, such assignment of error is without merit.

Appellants' motion for judgment notwithstanding the verdict and a motion for a new trial were both denied. In support of their assignments claiming error in the denial of those motions, appellants urge that as a matter of law operation of the car by Kim Sharp did not constitute reckless disregard of the rights of others as provided in I.C. § 49–1401 relating to liability of a motor vehicle owner to his guest. The term reckless disregard has been defined in Idaho as:

" * * * an act or conduct destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong or rash, wanton disregard, or conscious indifference to consequences." Mason v. Mootz, 73 Idaho 461, 253 P.2d 240; Foberg v. Harrison, 71 Idaho 11, 225 P.2d 69; Turner v. Purdum, 77 Idaho 130, 289 P.2d 608.

2 Restatement, Torts, § 500, defines reckless disregard as:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other

to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

This definition was accepted by the Supreme Court of Oregon in the Williamson v. McKenna case, 223 Or. 366, 354 P.2d 56. In Hunter v. Horton, 80 Idaho 475, 333 P.2d 459, this Court quoted with approval from 2 Restatement, Torts, § 500 g:

"g. Negligence and recklessness contrasted. Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness or failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency in that reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from the negligence which consists of intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind."

There is no merit in those assignments of error.

■ Defendants Sharp also complain that the trial court erred in giving an instruction on negligence, in that such instruction confused or misled the jury by failing to distinguish between negligence and reckless disregard of the rights of others. The instruction was supplemented by other instructions which properly advised the jury relative to the law and evidence necessary to make a finding on behalf of plaintiffs who had the burden to prove reckless disregard on the part of Kim Sharp. Instructions must be read and considered together. The whole law of the case cannot be embodied in a single instruction. Pittman v. Sather, 68 Idaho 29, 188 P.2d 600; Judd v. Oregon Short Line R.R. Co., 55 Idaho 461, 44 P.2d 291.

Because they are closely related we shall discuss additional assignments of error un-

der the question whether the facts of this case constitute reckless disregard of the rights of others.

Appellants assert that the trial court erred in denying their motion for a directed verdict at the close of plaintiffs' case. Error is directed at the denial of a motion for a directed verdict at the conclusion of all the evidence and denial of a motion for a new trial and judgment notwithstanding the verdict. The motion for directed verdict was made on the grounds that the evidence did not support the statutory requirement that reckless disregard of the rights of others must be established to support a verdict in this case because Marilee Smith was a guest in Kim Sharp's car. This same ground is used in part as a basis for the motions to grant a new trial and judgment notwithstanding the verdict.

■ It has been said in Mason v. Mootz, 73 Idaho 461, 253 P.2d 240, that in a guest case the burden is on the plaintiff to prove that the accident was caused by conduct on the part of the defendant amounting to reckless disregard. Proof of ordinary negligence will not suffice.

Murner v. Thorpe, 284 Mich. 331, 279 N.W. 849, was a factual situation of a fleeing motorist who operated his car without lights at an unlawful speed around corners and through intersections. The Michigan court held this to be acting with conscious indifference and with reckless disregard of consequences.

Driving without headlights, only with parking lights, at a speed in excess of 40 miles per hour over wet city streets, and one of the guests remonstrating with the driver, and the driver paying more attention to a young lady at his side than to the traffic, and running the car 100 feet into a fixed object after slightly hitting another car at an intersection, was held to be not a single act of negligence, but a deliberate course of conduct which amounted to heedless and reckless disregard of the safety of another. Schepp v. Trotter (1932) 115 Conn. 183, 160 A. 869. I.C. § 49–802 reads:

*"When lighted lamps are required.—* Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles * * * as hereinafter stated."

In Turner v. Purdum, 77 Idaho 130, 289 P.2d 608, this Court held that the violation of statutory provisions relating to lights on vehicles is negligence per se. See also, 21 A.L.R.2d 12.

I.C. § 49–701 regarding speed of a motor vehicle in the absence of special speed restrictions is as follows:

"Basic rule and prima facie limits.— (a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

\* \* \* \* \* \*

"(c) The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

Unlawful speed or speed which is excessive under the circumstances which may then exist is negligence on behalf of the operator. Excessive speed of an automobile may be determined from all the circumstances of its operation as well as the physical facts. Mason v. Mootz, supra. Following are cases where a guest admonished the driver about his driving and the driver was held to be guilty of reckless disregard by reason of all circumstances attendant thereto: Sorrell v. White (1931) 103 Vt. 277, 153 A. 359; Meyer v. Hart (1929) 110 Conn. 244, 147 A. 678; Schepp v. Trotter, supra; Pepper v. Morrill, C.C. A.Mass., 24 F.2d 320, 57 L.R.A. 750.

Operators of motor vehicles are required by statute to drive their automobiles upon the right half of the roadway. I.C. § 49–708.

I.C. § 49–701(c) above quoted in reference to speed at intersections is applicable to this case.

In sustaining an instruction the California Court of Appeals upheld the following application of the negligence rule in an intersection case:

"Accordingly, the fact that he did not know that any one was on the highway, is no excuse for the conduct, which would have amounted to recklessness, if he had known that another vehicle or person was on the highway." Johnson v. Johnson (1934) 137 Cal.App. 701, 31 P.2d 237.

Facts in the case of Cornelison v. Logan (1950) 253 Ala. 618, 46 So.2d 215, 21 A.L.R.

2d 206, bear a close resemblance to our facts regarding failure to apply brakes. Therein A.L.R. summarized the facts as follows:

"The evidence is sufficient to show wanton conduct, supporting a verdict for the plaintiff in an action by a guest against the driver of a truck-tractor, where it is shown that the defendant, driving down grade on a dark and unfamiliar winding road, with defective lights, made no attempt to slow down when informed by the plaintiff that there was a sharp turnoff ahead, but continued to drive at about thirty-five miles per hour for a distance of 100 to 150 feet in total darkness, his lights having completely gone out, the accident occurring as he attempted to make the turn."

In that case the Alabama Court said that the defendant knew of the dangerous circumstances under which he was driving; namely, a narrow winding road, a steep downgrade, a dark night without any visibility, and defective condition of his lights. With full knowledge of these conditions, he consciously and intentionally continued to drive his truck at a speed of approximately 35 miles per hour or more after his lights went out, for a distance of at least 100 or 150 feet (or half a block or more), without applying brakes or attempting to slow down, even though he was aware of such dangerous situation and was unfamiliar with the road ahead and even though the plaintiff had cautioned him about the turnoff to the right. The Court further said that under these circumstances the record manifested a typical case of wanton injury which would be characterized by a defendant with knowledge that a plaintiff or some person so situated would be subject to danger of being injured as a probable consequence of his conduct, and with reckless disregard of such consequences he pursued that conduct which proximately caused the injury complained of.

In Williamson v. McKenna, 223 Or. 366, 354 P.2d 56, it was said:

"A series or combination of negligent acts may constitute reckless conduct if taken together they indicate the so-called reckless state of mind."

See also Keefer v. Givens, 191 Or. 611, 232 P.2d 808; Turner v. McCready, 190 Or. 28, 222 P.2d 1010; Burrows v. Nash, 199 Or. 114, 259 P.2d 106.

Appreciation of the risk and its gravity is illustrated succinctly in 2 Restatement of Torts, § 500, Comment c:

"In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is

enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct."

See also, Alabam Freight Lines v. Phoenix Bakery, Inc., 64 Ariz. 101, 166 P.2d 816; Cope v. Davison, 30 Cal.2d 193, 180 P.2d 873, 171 A.L.R. 667; Stephens v. Weigel, 336 Ill.App. 36, 82 N.E.2d 697; Hunter v. Horton, 80 Idaho 475, 333 P.2d 459.

The Oregon Court treats gross negligence and reckless disregard as the same standard of conduct. That Court said:

"Recklessness and gross negligence are treated as synonymous in Turner v. McCready et al., 1950, 190 Or. 28, 54, 222 P.2d 1010, 1021, where the court said, 'it seems clear that under some circumstances the facts may present a jury question on the issue of gross negligence, although there is no *direct* evidence of a reckless state of mind manifested by warning given and ignored. * * * The element of recklessness may, under some circumstances, be inferred from evidence of the driver's conduct in the light of conditions and of what he must have known.' * *" Williamson v. McKenna, 223 Or. 366, 354 P.2d 56.

In consideration of a motion for a directed verdict this Court said:

"The party making the motion admits the truth of his adversary's evidence, and his adversary is entitled to the benefit of every inference favorable to him which may be drawn legitimately from any evidence before the court at the time the motion [was] made."

Manion v. Waybright, 59 Idaho 643, 86 P.2d 181; Hobbs v. Union Pacific R.R. Co., 62 Idaho 58, 108 P.2d 841.

In Claris v. Oregon Short Line R. R. Co., 54 Idaho 568, 33 P.2d 348, we said:

"The rule, we think, is that in a motion for nonsuit or directed verdict the evidence must be construed in the light most favorable to plaintiff. It is only where there is an entire absence of testimony tending to establish the case that a nonsuit may be properly ordered or a directed verdict granted. Where the question depends on a state of facts from which different minds may honestly draw different conclusions on that issue, the question must be submitted to the jury for determination. Where facts are disputed or inferences therefrom are reasonably disputable, the question is one for the jury."

We are called upon to determine if the evidence submitted relative to the operation of the car by Kim Sharp is sufficient to sustain a conclusion that it constituted reckless disregard of the rights of others. To

make such determination the evidence must be considered in the light most favorable to plaintiffs. Therefore, the evidence is susceptible to being construed that this defendant, Kim Sharp, was fearful of being identified by Mrs. Palmer and drove his car away from the Carter-Hayes intersection at a speed which was greater than reasonable under the circumstances; that he deliberately turned off his lights and proceeded in the darkness on the wrong side of the roadway toward the lighted intersection; was driving at a speed which was excessive for town driving; he was warned by one of the passengers that danger lurked ahead; he hit the depressions causing the occupants to be thrown violently forward; he continued on down an unfamiliar street for a distance of 173 feet without applying his brakes, although he could have stopped safely within the 173 feet; that he drove down a 45 degree embankment at such speed as to cause the automobile to flip over onto its top into the river just as the brakes were applied, all of which when taken together shows a deliberate course of conduct in reckless disregard of the rights of others and constituted the proximate cause of Marilee Smith's death. The motions were correctly denied by the trial court.

In Hunter v. Horton, supra, we said:

"To be a substantial factor in producing damage, a cause must have continued down to the moment of the damage, or at least down to the setting in motion of the final active injurious force which immediately produced or preceded the damage. As sometimes stated, a negligent act is the proximate cause of an injury when it is the last or one of the last acts, in the series of events which resulted in the accident, but for which the accident would not have happened."

In this case the driving without lights and failing to apply the brakes as a reasonably prudent person would have done under similar circumstances are the last of a series of acts which resulted in the accident which brought about the death of Marilee Smith. The questions were all submitted to the jury for determination

█ Appellants contend that contributory negligence on the part of Marilee Smith is a valid defense to the action. In this connection we cite Loomis v. Church, 76 Idaho 87, 277 P.2d 561. There it is said:

"We merely hold that ordinary contributory negligence is not a defense in an action based upon reckless disregard of the rights of others under our guest statute."

Appellants complain that Marilee Smith did not warn Kim Sharp, but do not show otherwise in what manner she was negligent or contributorily negligent.

■ Defendants next complain that instruction numbered 4 given by the court was erroneous as being against the law inasmuch as the action is based upon a greater degree of negligence than ordinary negligence; and further, that it is confusing and misleading in an attempt to distinguish the two types of negligence. Said instruction reads:

"4

"This action is based on negligence, and before a recovery may be had by the plaintiffs it must be shown that the defendants negligently violated some duty which they owed to plaintiffs, which was the proximate cause of the damages claimed.

"Plaintiffs claim that the defendants were negligent, and it is necessary that plaintiffs establish by a preponderance of the evidence that the defendants were negligent which was the proximate cause of the plaintiffs' injuries, or they cannot recover."

This instruction was supplemented by others which dealt with reckless disregard.[1]

Failure to state all law pertaining to a single issue in one instruction was settled in Berland v. City of Hailey, 61 Idaho 333, 101 P.2d 17. Therein the Court said:

"We have examined the instructions given by the court and those requested and think the instructions as a whole, as given, correctly advised the jury as to the law of the case. It is true that some of these instructions, standing alone, are incomplete; but it is the uniform rule of this court that failure to state a rule in its entirety, governing a particular phase of the case, will not be deemed prejudicial if, on the face of jury, they are correctly advised as to the law governing the case. * * *" (citing cases).

■ Defendants Sharp next allege error by the trial court in giving an instruction on imputed negligence of a minor to his parent which did not instruct properly as to law:

"No. 11

"You are instructed that any negligence or wilful misconduct of a minor

---

1. "No. 7
"With respect to the defendants Sharps this action is brought by the plaintiffs under the provisions of Section 49–1401 of the Idaho Code, which reads as follows:
" 'No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause for damages against such owner or operator for injuries, death or loss, in case of accident,

unless such accident shall have been intentional on the part of the said owner or operator or caused by * * * his reckless disregard of the rights of others.' "
"No. 8
"You are instructed that the term 'reckless disregard' of the rights of others is defined as follows:
" 'The term "reckless disregard" means an act or conduct destitute of heed or concern for consequences; especially

the whole body of instructions given the under the age of 18 years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or wilful misconduct."

I.C. § 49–313(b) reads:

"Any negligence or willful misconduct of a minor under the age of 18 years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or willful misconduct (except as otherwise provided in the next succeeding paragraph)."

The statute determines liability and as such the jury was correctly instructed pertaining to the joint and several liability of a parent. In this instance the parent is defendant Merrill J. Sharp.

Defendants assign error in the trial court's refusal to give their requested instruction No. 8, which is:

"You are instructed that the rate of speed of the Sharp car at the time of the accident, as disclosed by the evidence, does not constitute reckless disregard of the rights of others on his part."

 Speed of defendant Kim Sharp's car was a controversial issue in the trial of this case. There were witnesses who testified that Kim Sharp was traveling at a speed greater than was reasonable under the circumstances and this testimony as against that given by Sharps and the other survivor, Lynn Evenson, was correctly submitted to the jury for its consideration as to the truth of the matter, excessive speed, if found by the jury, being one of the elements contributing to the conclusion that his operation of the car was in reckless disregard of the rights of others.

 Defendant's requested instruction No. 9 was not given by the court. Defendants complain that error was committed by

foolishly heedless of danger, head-long rash; wanton disregard, or conscious indifference to consequences. This implies a consciousness of danger and a willingness to assume the risk, or reckless disregard to consequences.' "
"No. 9
"You are instructed that Marilee Smith was riding in the automobile of Merrill

Kim Sharp as a guest. Therefore, in order for you to find for the plaintiffs and against the defendants Sharps, you must find from a preponderance of the evidence that the conduct of the defendant Merrill Kim Sharp was in reckless disregard of the rights of others, as in the preceding instruction defined for you."

this refusal in that their theory of the case was not correctly submitted to the jury. Said instruction No. 9 reads:

"You are further instructed that if you find that the river bank and the objects on the river bank tended to blend with its background and the street lights on South Hayes street continued in an unbroken line to the north so as to prevent a proper lookout from disclosing their presence before it was too late to avoid them, then in that event you cannot find against the defendants Kim Sharp and Merrill J. Sharp, regardless of how you find against the defendant City of Pocatello."

This requested instruction was predicated upon an incorrect presumption of Kim Sharp having his headlights illuminated and otherwise operating his automobile in a reasonably prudent manner. The jury was required to make these determinations and the requested instruction would have invaded the province of the jury.

Defendants' requested instruction No. 17 was incorrect and properly denied. The evidence is undisputed in that Kim Sharp did not have his lights on during the half block the car traveled prior to entering the river. An instruction was given which stated in substance that every automobile is required to display illuminating devices during the hours of darkness.

We have examined other instructions given which were complained of in the motion for a new trial and find to be proper, applicable to the issues and correct statements of the law. Defendants urge that a new trial should have been granted because of the refusal to give certain instructions. We have read the instructions and conclude that they are not applicable to the circumstances and the issues of this case.

Judgment affirmed. Costs to respondents.

SMITH, C. J., KNUDSON and McFADDEN, JJ., and RASMUSSEN, District Judge, concur.